CITY OF ST. LOUIS, Plaintiff, v. NELSON et al., Defendants; AETNA IRON WORKS, Respondent; PORTER, Appellant.

**St. Louis Court of Appeals, November 15, 1904.**

1. **PRACTICE: Appeal: Appellant Accepting Payment of Judgment.** Where damages to a building and lot caused by changing the grade of a street were awarded part to the owner on account of the lot and part to the tenant on account of the building, which part both owner and lessee claimed, the acceptance by the owner of the sum awarded on account of the lot did not affect his right of appeal from the judgment awarding the remainder to the tenant.

2. **LANDLORD AND TENANT: Fixtures: Right of Removal.** The right to remove improvements made during the term of a lease, providing for such removal, expires with the term and can not exist under a new lease in which such right is not provided for except as to improvements made during the term of the new lease.

3. ———: ———: **Damages to Building.** In a proceeding by a city under section 6109, Revised Statutes of 1899, where damages to a building, awarded on account of a change of street grade, were claimed by both the owner of the ground and his lessee, the lease and the right of removal having expired, the owner was entitled to the sum awarded and evidence by the lessee in detail of cost of changes in the building made necessary, was incompetent in the absence of evidence that he was put to the expense in making such changes.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher*, Judge.

REVERSED (*with directions*).

*T. K. Skinker* for appellant.

(1) The final judgment, entered March 9, 1903, in the principal case awards the whole fund to Porter. For this reason the court erred in afterwards adjudg-

ing part of it to the Aetna Iron Works. Railway v. Railway, 152 Ill. 519; Hodgerson v. Railroad, 160 Ill. 430. (2) The Aetna Iron Works does not own the building on Porter's lot, and is not entitled to have any part of the fund, on the theory that that part was awarded as damages to the building. Real Estate Co. v. Realty Co., 103 Mo. App. 24; Anthony v. Rockefeller, 102 Mo. App. 226, 76 S. W. 491; Williams v. Lane, 62 Mo. App. 68; Loughran v. Ross, 45 N. Y. 792, 6 Am. Rep. 173; Talbott v. Cruger, 151 N. Y. 117; Stephens v. Ely, 162 N. Y. 79; Carlin v. Ritter, 68 Md. 478; Watriss v. Bank, 124 Mass. 571, 26 Am. Rep. 694; McIver v. Estabrook, 134 Mass. 55; Merritt v. Judd, 14 Cal. 59; Sanitary District v. Cook, 169 Ill. 184; Neiswanger v. Squier, 73 Mo. 192. (3) The court erred in allowing the testimony of Langalier to be read. New Madrid Co. v. Phillips, 125 Mo. 61, 28 S. W. 321; Turner v. Williams, 10 Wend. 139; Law v. Sanitary District, 197 Ill. 523; Harvey v. Head, 68 Ga. 250. (4) The Aetna Iron Works have sustained no damages for which compensation could be allowed to them. R. S. 1899, sec. 6110; Edmands v. Boston, 108 Mass. 535.

*Leverett Bell* for respondent.

## STATEMENT.

This is a controversy over the rightful ownership of a balance of $2,070.40 remaining of the larger sum of $2,978.90, paid into court, by the city of St. Louis, as damages caused by change of grade of the intersecting thoroughfares, Papin and Twenty-first streets. In 1891, the city constructed a bridge on Twenty-first street street over the railroad tracks, which necessitated a change of grade of adjacent streets, including those mentioned. In the progress of this proceeding brought September, 1892, by the city, pursuant to statute (sec. 6109, Revised Statutes 1899), to which the appellant and the McMurray-Judge Architectural Iron

Company were made codefendants, the latter being succeeded in interest by respondent, the commissioners made report, in part, as follows:

"The actual damages sustained by John C. Porter, Aetna Iron Works, lessee, or the owner of a lot of ground situated in city block No. 2282, having a front of forty feet six inches on Papin street by a depth of one hundred and twenty-seven feet six inches, being lot No. — in city block —, bounded north by Papin street, east by lot 5, south by alley and west by Twenty-first street, by reason of the change of grade of Twenty-first street, between Papin street and Chouteau avenue, and of Papin street between Twenty-first street and a point one hundred and fifty feet east of Twenty-first, to be the sum of $3,078.90."

On March 9, 1903, a judgment was rendered of which the following are the pertinent portions:

"And the court doth now find that the actual damages sustained by John C. Porter, owner, Aetna Iron Works, lessee (the said John C. Porter having heretofore filed a remittitur in the sum of $100), of a lot of ground situated in city block 2282, and described in said commissioners' report to be the sum of $2,978.90; and the actual damages sustained by the Aetna Iron Works, owner of a lot of ground in city block 2282 and described in No. 2 of said commissioners' report, to be the sum of $15,660.20; and the actual damages of Consolidated Steel and Wire Company owner of a lot of ground in block 2283 described in No. 3 of said commissioners' report to be $1,000;" [here follow like awards in favor of fifteen other persons or groups of persons, and then the judgment proceeds as follows:] "which said sums the court doth allow said parties respectively as their damages; and the court doth order, adjudge and decree that the city of St. Louis pay said sums to said parties as aforesaid within six months from the date hereof, with interest thereon from the date of this decree at the rate of six per cent per annum.

The court doth further order, adjudge and decree that all the costs of this proceeding shall be taxed against and paid by the city of St. Louis.''

In July following, the city paid the amount above-mentioned into court by authority of the order following:

''It is ordered by the court that the city of St. Louis be granted leave to pay into court for the use and benefit of the following parties the following amounts in the above-named case to change the grade of Twenty-first street under ordinances Nos. 15119 and 16465, to-wit: John C. Porter, Aetna Iron Works, lessee, $2,978.90; Missouri Malleable Iron Company, B. Roth Tool F. and Machinery Company, lessee, $8,580; Mary E. and Thomas J. Walsh and Margaret M. Kennedy; $400; Linmar Realty Company or Margaret Walsh, $2,910; Regina Walsh, Linmar Realty Company, Schwarzchild & Sulzberger, $210.''

Subsequently the parties hereto interpleaded, the appellant setting forth in his claim that he was sole owner of the lot at date of judgment and no other party had any interest therein, except that respondent was tenant by verbal letting running from month to month, and therefore he was entitled to the full amount. The respondent in its claim alleged that when this proceeding was begun in 1893, the McMurray-Judge Architectural Iron Works Company was one of the original defendants and held a lease of the property then vacant for ten years from January 1, 1882, which lease contained right of renewal for a term of ten years and on July 1, 1892, appellant had granted a renewal of the first lease to the same lessee for nine years and six months, the improvements on the lot to March 6, 1893, having been erected by above company and since by its successor, respondent, which had acquired its interest in the lot and improvements in manner specified. That the award of $2,978.90 was made up of damages to the improvements, $2,070.40, and to the ground,

$908.50, the items of which were particularized. That the second lease had expired the first of January, 1902, and the respondent was holding over as tenant from year to year, paying rental to appellant, and the buildings and improvements were its property. That the damages related back to the erection of the bridge, which was completed in 1892, and under the lease appellant was entitled to remove the improvements and was owner of the damages, $2,070.40, allowed for injuries to such improvements.

The testimony offered at the hearing tended to establish that appellant is owner of the lot at corner of Twenty-first and Papin streets, improved with a building used as a foundry, for damages to which property the award was made. By lease of date January 1, 1882, Porter demised these premises to the McMurray-Judge Architectural Iron Company at rental of eighty dollars per annum payable in quarterly installments, and the payment of all taxes, general and special, of every character whatever, as the instrument of lease specifically stipulated thus:

"1.   All improvements erected on said premises by said lessee, or its representatives, or by anyone who may claim under it, are bound for the payment of each quarterly installment of rent, and for the city, county and State taxes, and all other taxes and demands as aforesaid, and for any arrears of rent or taxes; and in case of the punctual payment of the rent and taxes, as herein specified, the said lessee is hereby authorized to remove all such improvements (and no others), at the expiration of this lease, which is, or anyone who may claim under it, may have erected on said premises during said term.

"2.   And the said lessor, if so requested by said lessee six months before the expiration of the term hereby demised, will grant a further lease of the aforesaid premises to said lessee for the further term of

ten years, to commence on the first day of January, 1892,'' etc.

During the term of this lease, the then lessee, in 1882 caused to be constructed a building on the lot, which, without material or substantial change, has continued in use and occupation of respondent and kept by it in repair. This lease expired on the last day of the year of 1891, but the lessee remained in possession, although in default in payment of rental and taxes: in October, 1892, a new lease was entered into between the parties, antedated July first of the same year, for a period of nine years and six months; the latter lease contained similar stipulations for payment of all taxes by lessee and for an increased rate of rental, but made distinct provision for the ownership and rights in the improvements in the language following:-

''All improvements erected on said premises by said lessee or its representatives, or by any one who may claim under it, are bound for the payment of each quarterly installment of rent, and for the city, county and State taxes, and all other taxes and demands as aforesaid, and for any arrears of rent or taxes; and in case of the punctual payment of the rent and taxes herein specified, the said lessee is hereby authorized to remove all such improvements (and no others) at the expiration of this lease which it or anyone who may claim under it may have erected on said premises during said term.''

At the trial of exceptions to the commissioners' report returned in these proceedings, one of the commissioners had been examined, testifying to the following effect:

''Q. What did you allow John C. Porter? A. John C. Porter, we allowed him $3,078.90.

''Q. He is the owner of the property fronting about forty feet on Twenty-first street, occupied by the

Aetna Iron Works, isn't he? A. Yes, the Aetna Iron Company are tenants of his.

"Q. You allowed him $3,000? A. We did; $3,078.90.

"Q. What was that for? A. For changing brick work $800.

"Q. In the sidewalk? A. No; that was a wall—a brick wall.

"Q. How much for that? A. $800; stone, 85 perches $255, rafters, sheeting, tiling the roof and so forth, $660.40; changing the roof, three doors, window sash, re-setting the same, and so on, $150; guttering along the side, $167, paving the alley, $45; filling in, at fifty cents a cubic yard, $525; paving 233 feet at 70 cents per foot, brick paving, on Twenty-first street, $256.10.

"Q. Was that paving on Twenty-first street? A. Yes; 223 feet of paving has been carried out at 70 cents, $256.10; it is $156.10; 223 feet of paving at 70 cents a foot.

"By the Court: How much is the cost of paving the alley? A. Fifteen cents a foot—300 square feet.

"Q. Forty-five? A. Yes, that is correct.

"By Mr. Bell: What else? A. Then the sewer was $15; changing trusses, taking down and re-setting them—twelve of them at 10—$120; painting, glazing, and so forth, $50; sheet metal, repairing roof, and so on, $35.40; that is the total for John C. Porter.

"Q. Making $3,000? A. We will have to take off that brick paving of 223 feet, and put that at $156.10 just exactly $100 below that figure.

"Q. How much is the glazing—what would that reduce his award? A. That would reduce his award $100, make it $2,978.90—just take off $100.

"Q. His award was $3,000? A. $3,078.90."

This testimony was preserved by bill of exceptions and over the objection of appellant, respondent was permitted to read the above extract therefrom at hear-

ing of this controversy. On the day this appeal was perfected, the appellant received and receipted to the clerk of court for $922.13, being that portion of the award not claimed by respondent with interest accrued thereon.

REYBURN, J. (after stating the facts).—1. The aggregate amount deposited by the city in court was $2,978.90 as stated, of which the iron works asserted right to but $2,070.40, leaving the ownership of appellant to the remainder uncontroverted and undisputed and by necessary implication conceded. Under these conditions, when respondent's claim was advanced, had appellant immediately asked the court to order payment to him of this difference, to which respondent never laid claim, such prayer might justly have been granted and such order would doubtless have been then made. The right of appellant to this balance was not disturbed by the deliberation with which he applied to the court for its possession, nor were the rights of the respective claimants to the contested fund connected with or affected by its delivery on the day of this appeal to appellant. The amount thus paid over to appellant was in no sense the fruits of this controversy, but mere the collection by the lawful owner of a sum of money, theretofore in hands of the clerk in which respondent asserted no interest and to which it had no right, as respondent itself, by its own conduct, acknowledged. If the payment accepted had been part of the subject of this litigation between appellant and respondent, his authority to prosecute this appeal thereafter might justly be disputed, but appellant should not be barred of his right of review of the ruling of the trial court upon the ownership of the fund in dispute, by his acceptance of a sum to which his right of possession and ownership had never been challenged. As declared by this court heretofore, "An acceptance of payment of a money judgment is a full and complete

discharge of the unsuccessful party, against whom the judgment was rendered, from all claims which were litigated," etc. Noah v. Ins. Co., 78 Mo. App. 370. The appellant had as clear title to the sum not involved in this dispute, as he would have had to a sum paid into court for another parcel of realty damaged by the same municipal improvement, had he been possessed of such other impaired realty. The cases relied on by respondent to uphold a different conclusion are to be distinguished as involving a state of facts, where payment of part of the judgment sought to be reviewed on appeal had been received and accepted.

2. The buildings on the lot of appellant having been erected by lessee pending the term of the first lease, the lessee enjoyed the right of their removal at its expiration of all such improvements, provided punctual payment had been made of the rent reserved and all taxes assessed against premises, a condition with which the lessee had not complied, and this conditional right therefore was not in force in the years 1891 and 1892, when the change of grade was made and the statutory proceeding inaugurated. The rights of appellant to the premises in question were then and now determined by the second lease executed in October, 1892, pending this proceeding though bearing date prior to its institution, and by the provisions of this lease then operative the right of removal of existing improvements on the demised premises was not conferred on or secured by the lessee, but the right of removal was expressly confined and restricted to improvements erected during its term subject to the condition of prompt performance of the stipulations of the lease respecting rental and taxes. The acceptance of the new lease was equivalent to a surrender of the possession to the landlord, and the re-entry under the new in lieu of the old tenancy, and appellant thereupon was in possession of the demised premises by virtue of such new agreement of tenancy and former rights, as well

St. Louis v. Nelson.

unqualified as contingent, under the prior and expired lease were effectually extinguished and abandoned. A lessee's right of removal of improvements attends the life of the lease creating such right and does not survive but expires with it, and under a new contract of lease where such right is not reserved it can not subsist. Exchange, etc., Co. v. Schuchmann, etc., Co., 103 Mo. App. 24; Loughran v. Ross, 45 N. Y. 792.

3. Respondent does not contend that it has been put to the expense of making the changes, nor that it has made such changes in the building as detailed by the commissioner, for the foundation of the allowance by the board of commissioners for the aggregate in controversy, nor does any legal obligation appear on its part to pay such expense; in the absence of ambiguity patent on the face of the judgment of March 9, 1903, upon the report of the commissioners, it may be questioned whether such testimony was competent in any aspect, but the items described, if such alternations and costs have become essential, are imposed on appellant as owner of such abutting premises, and constitute damages suffered by him not by respondent, his parol tenant. The respondent is not the owner of the improvements, which with the lot on which they stand, are the property of appellant.

The judgment is reversed with directions to enter order awarding payment of the sum in controversy to appellant herein. All concur.