## MERRELL *v.* GARVER ET AL.

[No. 7,785. Filed March 11, 1913. Rehearing denied June 20, 1913.
Transfer denied November 18, 1913.]

1.  FIXTURES.—*Removal.—Waiver of Right.*—Where a tenant, by
    the terms of his lease, has the right to remove buildings or fix-
    tures, such right is not lost by his holding over under such lease
    with the landlord's consent, either express or implied. p. 520.
2.  LANDLORD AND TENANT.—*Nonpayment of Rent.—Forfeiture.*—
    Forfeitures are not favored in law, and the nonpayment of rent
    will not *ipso facto* work a forfeiture of a lease providing for
    forfeiture upon default of payment, but in order to work a for-
    feiture there must be some affirmative action on the part of the
    one entitled to enforce same. p. 520.
3.  LIFE ESTATES.—*Fixtures.—Lease.—Forfeiture.—Nonpayment of
    Rent.*—Under a lease giving lessee the right to remove build-
    ings erected by him, and providing for forfeiture on his failure
    to make payments as therein provided, a life tenant, to whom
    the rent was due, was the only person entitled to insist upon a
    forfeiture, and the remaindermen were not affected by any fail-
    ure to pay, or by any adjustment of the rents. p. 520.
4.  LANDLORD AND TENANT. — *Payment of Rent. — Forfeiture. —
    Waiver.*—The acceptance of payment of past-due rent and a sub-
    sequent continuance of the relation of landlord and tenant, shows
    a waiver of any right of forfeiture that may have existed. p. 521.

5. FIXTURES.—*Removal.—Forfeiture of Right.—Evidence.*—A tenant's right to remove fixtures is forfeited by the taking of a new lease, unless there is something in the contract indicating a different intention, and if the contract is indefinite or ambiguous on the subject, parol evidence may be received to ascertain the intention of the parties. p. 521.

6. FIXTURES.—*Contract.—Intention of Parties.*—Where by the terms of a new lease executed by a life tenant, buildings, erected on the land by the lessee pursuant to the old lease granting the right to remove same, were transferred to the life tenant by the lessee in consideration of the satisfaction of payments defaulted by him under the old lease and the release of certain future payments, it sufficiently appears that the parties did not regard the buildings as part of the real estate, and that such life tenant, on becoming the owner of such buildings, intended to hold them separate and apart from the estate in fee. pp. 522, 523.

7. FIXTURES.—*Effect of Agreement.*—Buildings erected by a tenant under an agreement with the owner of the fee that they shall belong to the tenant, his heirs or assigns, and reserving to them the right of removal, are personal property. p. 523.

8. FIXTURES.—*Property of Life Tenant.—Rights of Remaindermen.*—The remaindermen of a life estate acquired no interest by virtue of the character of the consideration in a transaction where the lessee of a life tenant transferred to the latter buildings located on the premises, and which were at the time the personal property of such lessee, in consideration of a debt due to such life tenant for taxes which such lessee failed to pay in accordance with the terms of the lease. p. 524.

9. ESTATES.—*Merger.—Personal Property.*—The doctrine of merger primarily has no application to personal property, but is applicable to estates in lands. p. 525.

10. FIXTURES.—*Removal.—Merger in Realty.*—Buildings situate upon real estate, though shown to be personal property in the first instance, may cease to be such and become a part of the real estate upon which they stand. p. 525.

11. FIXTURES.—*Tenant.—Agreement for Removal.—Merger.*—The failure of a tenant, who owns buildings erected on the land with the right of removal, to remove same within the time specified therefor, or, in the absence of a specified time for their removal within a reasonable time after the termination of the lease, works a forfeiture of such right, and the title to such buildings is merged into that of the real estate upon which they stand. p. 525.

12. FIXTURES. — *Buildings Treated as Personalty.* — Buildings erected in pursuance of a lease which shows them to be the personal property of the lessee, will continue to be treated as chat-

tels until it is shown that something has been done, or omitted, whereby the right to claim them as such has been lost.   p. 526.

13.  ESTATES.—*Merger.*—*Equity.*—Merger is a doctrine of equity and its application is governed by the principles and rules of equity.   p. 526.

14.  ESTATES.—*Merger.*—*Equitable Doctrine.*—While a merger by operation of law takes place where a greater and a less estate, held in the same right, meet in the same person without any intermediate estate, in equity such merger depends upon the intention of the party in whom the estates vest, and the intention to prevent a merger will often be inferred from circumstances indicating that the interest of the party will be best subserved by avoiding a merger. .  p. 527.

15.  ESTATES.—*Merger.*—*Equitable Doctrine.*—Equity may be invoked to change the effect of a writing where it appears that right and justice will be thereby promoted, and it will interpose to prevent a merger in order thereby to do substantial justice. .p. 527.

16.  FIXTURES.—*Interest of Remaindermen.*—*Purchase by Life Tenant.*—Where a life tenant acquired from his lessee a building which was personalty under the lease, equity will permit him to hold it as such against the remaindermen where it appears that such was the evident intent of the parties, that it is not detrimental to his interest so to do, and that equity will thereby be promoted.   p. 528.

17.  LIFE ESTATES.—*Fixtures.*—*Rights of Remaindermen.*—The fact that buildings, acquired as personalty by the life tenant, remained upon the land until the death of such life tenant, does not make them the property of the remaindermen as a part of the real estate, there having been no forfeiture or merger.   p. 529.

18.  LIFE ESTATES.—*Fixtures.*—*Improvements by Life Tenant.*— Permanent improvements made by a life tenant cannot be charged to the remainderman without his consent, either express or implied, and on the termination of the life estate they pass as a part of the realty, but such rule is not applicable in a case where buildings were acquired and sold by the life tenant as personalty.   p. 529.

19.  APPEAL.—*Review.*—*Findings.*—A finding of facts rendered by the trial court must be considered as a whole.   p. 530.

From Fayette Circuit Court; *N. S. Givan*, Special Judge.

Action by Sarah E. Garver and others against William Merrell and others.  From an adverse judgment, the defendant, William Merrell, appeals.  *Reversed.*

*McKee, Frost & Elliott* and *Conner, Conner & Chrisman*, for appellant.

*Florea & Broaddus*, for appellees.

Felt, P. J.—This is a suit for partition of real estate. The complaint was answered by general denial. Appellant filed a cross-complaint against his codefendants and the plaintiffs in which he alleges that he is the owner of a certain brick livery barn and shed attached thereto; that the same is not a part of the real estate upon which the building stands. This cross-complaint was answered by general denial. Upon request, the court made a special finding of facts and stated its conclusions of law thereon.

The substance of the finding of facts, as far as material to the questions to be decided by this court, is: That on February 11, 1869, one Abram B. Conwell was the owner in fee simple of certain real estate described in the complaint and continued to be such owner until the time of his death in 1885; that on February 11, 1869, said Conwell executed to one Moses Long a written lease for a certain portion of said real estate in the city of Connersville, Indiana, for a term of years from August 31, 1869, until December 31, 1890, for an annual rental of $300; that said tenant was to pay the taxes and assessments against said lot during the time of said lease with the further condition that upon failure of said Long to pay any of the sums so due from him, his rights under the lease were forfeited; that said Long and his heirs and assigns were to have the right to improve said real estate by erecting thereon buildings and using the same for a livery stable; that said Long and his heirs and assigns were to deliver up the quiet and peaceable possession of said real estate on December 31, 1890, to the said Abram B. Conwell, his heirs, executors or assigns; that "all buildings and improvements made or now on said premises by said Moses Long, his heirs or assigns shall belong to the said Moses Long, his heirs or assigns with right of removal by him or them if a contract for the same cannot be made mu-

tually by the said Conwell and Long, their heirs and assigns''; that thereafter, by assignment duly made, during the life of said lease, Thomas J. Shields, became the owner of all the property rights and privileges secured to said Long by the terms thereof; that said Shields took possession of said premises under said lease and continued to hold the same as hereinafter stated; that by the terms of the last will and testament of the said Abram B. Conwell his daughter, Anna Merrell, became the owner for and during her natural life of the real estate upon which such livery barn was situate, and by the further terms of said will the children of said Anna Merrell, appellant and appellees, became the owners as tenants in common of said real estate subject to the life estate of said Anna Merrell therein; that said Moses Long in pursuance of the terms of said lease made valuable improvements upon said real estate consisting of a two story brick livery barn and frame shed connected therewith, which buildings were on said estate at the time said lease was assigned to said Thomas J. Shields; that said improvements are still upon said real estate; that at the expiration of said lease on December 31, 1890, by mutual agreement between said Shields and said Anna Merrell, the owner of the life estate in said real estate, said Shields continued in possession of said property ''under the same terms and conditions provided for in said lease of date February 11, 1869''; that he paid rents for said premises to said Anna Merrell, the life tenant; that the remaindermen, appellees herein, did not consent to the holding over of said Shields under said lease; that after said Anna Merrell was the owner of said life estate said Shields became in arrears in the payment of taxes on said property as provided in said lease, and on June 7, 1901, transferred and assigned to the said Anna Merrell all his title and interest in said improvements upon said real estate in consideration of his release from payment of taxes accrued against him and from liability, thereafter to pay taxes on said real estate, but it was expressly provided that

he should pay taxes on the said improvements assessed against him; that by the terms of said instrument he was given the right to occupy said premises and use the same as under the former lease for a period of two years from June 1, 1901, for which he agreed to pay a rental of $40 per month; that thereafter on September 23, 1901, said Anna Merrell transferred and assigned to appellant all her right, title and interest in said improvements situate upon said leased premises; that said Anna Merrell continued as the owner of the life estate in said property until her death in November, 1905, "and the said William Merrell continued to be the owner of whatever interest the said Anna Merrell owned and had in said improvements up to the time of the death of the said Anna Merrell and still owns whatever interest the said Anna Merrell transferred and assigned to him and had the power and authority to transfer and assign to him on the 23rd day of September, 1901;" that the real estate described in the complaint is not susceptible of division between the owners thereof without great damage to the respective owners and should be sold; that the real estate on which said livery barn is situate without said buildings, is of the value of $6,000 and including said improvements is of the value of $8,000; that the improvements placed on the real estate enhanced the value thereof $2,000.

The court found the undivided interests of appellant and appellees in said real estate to be in accordance with their several interests in the fee thereof and stated its conclusions of law accordingly. The court also stated as a conclusion of law that appellant has no separate, or additional interest in, or right to, the livery barn aforesaid, other than his interest in the fee as above stated. The appellant duly excepted to the several conclusions of law and moved for a new trial on the ground that the findings of the court are not sustained by sufficient evidence; also that the findings are contrary to law. The motion for a new trial was overruled. The appellant has separately assigned error on each conclu-

sion of law on the finding of facts.    Also that the court erred
in overruling his motion for a new trial.    Several interesting
and important questions are raised by the errors assigned.

Appellant asserts that the livery barn erected on the lot
in question in pursuance of the terms of the original lease
was and is personal property; that the life tenant purchased
the buildings as such and transferred the same to appellant,
who owned the same when this suit was begun and is entitled
thereto, separate and apart from the real estate upon which
the barn is situated.    Appellees contend: (1) That by hold-
ing over under the original lease from December, 1900, to
June, 1901, the lessee forfeited his right to the buildings and
they became a part of the real estate;    (2) that by taking
a new lease in which the buildings were not reserved to the
tenant, the right to claim the same was forfeited and they
have become and are a part of the real estate;    (3) that
when Anna Merrell, the life tenant, purchased the buildings,
the lease hold estate was merged in her life estate and at her
death the owners of the fee took the buildings as a part of
the real estate upon which they are located.

Where the tenant, by the terms of his lease, has the right
to remove buildings or fixtures, and holds over under the
old lease, by consent of the landlord, express or im-
1. plied, the right to remove fixtures or buildings is not
lost to the tenant.    Jones, Landlord and Tenant
§718; *Hedderich* v. *Smith* (1885), 103 Ind. 203, 205, 2 N.
E. 315, 53 Am. Rep. 509; *Adams* v. *Tully* (1905), 164 Ind.
292, 295, 73 N. E. 595; 19 Cyc. 1067; *Young* v. *Consoli-
dated Imp. Co.* (1901), 23 Utah 586, 65 Pac. 720; *Wright* v.
*MacDonnell* (1895), 88 Tex. 140, 30 S. W. 907.    The facts
found show no ground for a forfeiture of the build-
2. ings unless it results from the failure of the tenant
to pay taxes which were due the life tenant as a part
of the rent.    No failure of any kind on the part of
3. the tenant is shown prior to the death of Abram B.
Conwell. The life tenant was entitled to the rents and

the remaindermen were not affected by any failure to pay, or by any adjustment of rents. Forfeitures are not favored in law, and nonpayment of rent will not *ipso facto* work a forfeiture of a lease which provides for a forfeiture thereof upon default of payment. There must be some affirmative action on the part of the one having the right to enforce the forfeiture. In this case no demand is shown and no steps were taken by the life tenant, or any one else to work a forfeiture. As the only default was a failure to pay a part of the rent when due, the life tenant to whom the rent was owing, was the only person who could at that time insist upon a forfeiture for such nonpayment of rent, and she did not do so, but on the contrary, accepted payment thereof after it was due. Where a right to forfeit a lease is

4. given for the nonpayment of rent, the acceptance of payment of the past-due rent and the continuance of the relation of landlord and tenant, thereafter, shows a waiver of any right of forfeiture that may have existed. *Bacon* v. *Western Furniture Co.* (1876), 53 Ind. 229, 231; *Jenkins* v. *Jenkins* (1878), 63 Ind. 415, 421, 30 Am. Rep. 229; *Hill* v. *Nisbet* (1884), 100 Ind. 341, 356.

Where a lease provides that the tenant may remove fixtures or buildings and the parties enter into a new lease which does not so provide, there is a conflict of author-

5. ity as to whether the right of the tenant to remove such property continues under the new lease or is forfeited by entering into a new lease which does not by its terms save such right to the tenant. Among the authorities holding that the right to remove fixtures or improvements is not lost by taking a new lease which does not reserve to the tenant such right, where such fixtures were installed, or improvements made, under a former lease giving the right of removal to the tenant, are the following: *Second Nat. Bank* v. *Merrill Co.* (1887), 69 Wis. 501, 34 N. W. 514; *Kerr* v. *Kingsbury* (1878), 39 Mich. 150, 33 Am. Rep. 362; *Young* v. *Consolidated Imp. Co., supra; McCarthy* v. *Truemacher*

(1899), 108 Iowa 284, 78 N. W. 1104; *Broadus* v. *Smith* (1898), 121 Ala. 335, 26 South. 34, 77 Am. St. 61. Among authorities holding that the right to remove fixtures or improvements, so installed or made, is lost by taking a new lease not reserving to the tenant the right of removal, are the following: *Stephens* v. *Ely* (1900), 162 N. Y. 79, 56 N. E. 499; *Talbot* v. *Cruger* (1896), 151 N. Y. 117, 45 N. E. 364; *Carlin* v. *Ritter* (1888), 68 Md. 478, 13 Atl. 370, 16 Atl. 301, 6 Am. St. 467; *Sanitary Dist. of Chicago* v. *Cook* (1897), 169 Ill. 184, 48 N. E. 461, 39 L. R. A. 369, 61 Am. St. 161; *Bauernschmidt Brewing Co.* v. *McColgan* (1899), 89 Md. 135, 42 Atl. 907; *Spencer* v. *Commercial Co.* (1902), 30 Wash. 520, 71 Pac. 53; *City of St. Louis* v. *Nelson* (1904), 108 Mo. App. 210, 83 S. W. 271; *Watriss* v. *First Nat. Bank* (1878), 124 Mass. 571, 26 Am. Rep. 694. In this State and in many other states, the rule seems to prevail that where a new lease is taken, the right to remove is forfeited by the tenant, unless there is something in the contract indicating a different intention, and if the contract is indefinite or ambiguous on the subject, parol evidence may be received to ascertain the intention of the parties, the same as in any case involving ambiguous writings. Jones, Landlord and Tenant §§718-720; *Hedderich* v. *Smith, supra; Adams* v. *Tully, supra; Indianapolis, etc., R. Co.* v. *First Nat. Bank* (1892), 134 Ind. 127, 33 N. E. 679.

In the case at bar, by the terms of the same instrument the life tenant gave a new lease for two years, and the tenant, in consideration of the satisfaction of a debt against

6.    him for taxes he had failed to pay under the old lease, and in consideration of a release from the payment of taxes on the real estate in the future, transferred and assigned to the life tenant the buildings occupied by him as tenant. This clearly shows that the life tenant and the lessee did not then regard the buildings as a part of the real estate. If at the time of this transaction the tenant still owned the buildings, and they had not previously be-

come a part of the real estate, by such transfer, the life tenant became the owner of the buildings, but the tenant had the right to continue to occupy the premises under his lease.

7. Where buildings are erected on real estate by a tenant under an agreement with the owner of the fee that they shall belong to the tenant, his heirs or assigns, and the right to remove the same is expressly reserved to such owners, the buildings are personal property, for such facts show an intention on the part of both landlord and tenant to keep the property in the buildings separate and distinct from the title to the real estate upon which such buildings are located. *Adams* v. *Tully, supra; Rogers* v. *Cox* (1884), 96 Ind. 157, 49 Am. Rep. 152; *Griffin* v. *Ransdell* (1880), 71 Ind. 440; *Chatterton* v. *Saul* (1854), 16 Ill. 149; Wells, Replevin (2d ed.) §61; Cobbey, Replevin (2d ed.) §§363-365; *Wright* v. *MacDonnell, supra; Broadus* v. *Smith, supra.* From the foregoing it is clear that the life

6. tenant became the owner of the buildings in question and that she intended to hold them separate from her life estate in the fee, and thereafter, on September 23, 1901, sold and transferred the same to appellant by a written instrument which is in part as follows:

"This Indenture Witnesseth: That Anna Merrell of the County of Fayette and State of Indiana, hereby releases, quit-claims, assigns and transfers to William Merrell of said county of Fayette, State of Indiana, for the consideration hereinafter named, all right, title and interest in and to the improvements upon the west end of lots 47 and 48 in John Conner's Original Plat of the town, now city of Connersville, Fayette County, Indiana, being what is known as the livery stable, and being the same property released and transferred to me by Thomas J. Shields, and now held and owned by me as personal property, independent of and not as a part of the life estate given me under the will of my father, Abram B. Conwell."

But it is claimed that, independent of any act or intention of the life tenant, by operation of law, the buildings when

transferred to the life tenant, became an inseparable part
of the real estate on which they are located, by merger of
the lesser estate into the greater. The situation is peculiar.
The tenant while securing a new lease, by the same instru-
ment, sold and transferred the buildings upon the real estate
leased by him. If the life tenant could hold the buildings
as personal property, she could sell and transfer the same
to appellant and thereby vest in him title to such buildings
as personal property. If such sale and transfer had the
effect of changing the character of the property from per-
sonalty to realty and merging the title to the buildings with
that of the real estate, then the subsequent sale to appellant
vested in him no right or title to the buildings. When the
sale was made to Anna Merrell, the life tenant, the occupying
tenant was relieved from the payment of taxes on the real
estate as provided in the first lease, but it was expressly stip-
ulated that he should pay the taxes on the improvements
which were assessed in his name. All the facts indicate that
in so far as the intention of the immediate parties to the
transaction is concerned, they at all times regarded the build-
ings as personal property.

The appellees claim that as the consideration paid by the
life tenant for the buildings was the satisfaction of a debt
due her for taxes the tenant had failed to pay accord-
8. ing to the provisions of the old lease, the purchase of
the buildings should inure to the benefit of the re-
maindermen, since the life tenant is bound to pay taxes on
the real estate in which she holds such estate. Whatever
rights appellees may have in the property, it is clear they
acquired nothing by virtue of the character of the considera-
tion given for the buildings. It does not appear that the life
tenant had allowed the taxes to become delinquent. The
tenant had agreed to pay the taxes as a part of the consider-
ation for the lease, and when he paid them to the life tenant,
whether in money or property, he was only paying rent due
her under the lease. So long as the interests of remaindermen

are not endangered or affected, they can claim nothing by reason of any settlement or adjustment of rents due the life tenant.

The claim that the title to the buildings merged into the title to the real estate when the life tenant purchased them, presents a more serious question. We have held that under the terms of the lease the buildings were personal property.

The doctrine of merger, primarily has no application 9. to personal property, but is applicable to estates in lands. 20 Am. and Eng. Ency. Law (2d ed.) 588. This fact is of importance in the determination of the question of merger in this case. However, it is apparent, that buildings situate upon real estate, though shown to be 10. personal property in the first instance, may nevertheless, by express agreement, or by conduct, of the interested parties, cease to be personal property and become a part of the real estate upon which they stand. The rule, in this State and in many others, is that a tenant who 11. owns buildings placed upon the land of another, with the right of removal reserved, may remove them within the term of his lease or within a reasonable time after the termination of the lease, or any extension thereof, unless by the express terms of the lease he forfeits them if not removed by a specified date. Failure to remove buildings or other improvements, within such time forfeits the right to do so, and notwithstanding they were personal property up to the time of such forfeiture, when the forfeiture takes place, being upon the real estate, the title to such improvements is merged into that of the real estate upon which they stand. Jones, Landlord and Tenant §719, states the rule as follows: "While the common law right to remove trade fixtures must be exercised during the term, a similar privilege conferred by agreement is not so narrowly restricted as to the time when the removal must be effected. If a house is erected under a lease giving the right of removal at the expiration of the term, the tenant is not required to remove the house

during his term, but can occupy it during the full term, and has a reasonable time thereafter to remove it. If nothing appeared to prevent, the removal should be effected without any considerable delay; at least, no great time should elapse before the work of removal is commenced. If the removal should not be effected within a reasonable time after the term expired, the right would cease and the property become a part of the realty." See, also, *Rogers* v. *Cox, supra* 159; *Adams* v. *Tully, supra* 295. In this case, the buildings having been erected in pursuance of a contract which

12. shows them to be the personal property of the tenant, they will continue to be treated as chattels until it is shown that something has been done, or omitted to be done, by which the right to claim them as such property has been lost.

The buildings in question were erected in the lifetime of Abram B. Conwell, the ancestor through whom Anna Merrell derived her life estate and from whom appellant and appellees obtain title to the real estate in controversy. Appellees, therefore, are in no sense deprived of any right or property given them by the will of said Conwell if the buildings have in fact continued to be personal property. Their claim depends upon a forfeiture of the right of the tenant, or some one in privity with him, to hold the buildings as personal property, resulting in a merger of the title to the buildings into that of the real estate upon which they stand. The finding of facts shows no forfeiture of the right to hold the buildings as personal property and the claim of appellees is therefore dependent upon the proposition that independent of any forfeiture, by operation of law, the title to the buildings merged with that of the real estate when purchased by Anna Merrell, the life tenant.

Merger is a doctrine of equity and in the decision of this question we are governed by the principles and rules

13. of equity. In 2 Pomeroy, Eq. Jurisp. (2d ed.) §786 it is said: "The single principle from which the

doctrine, in all its modes, and forms of application directly results in the fruitful maxim, that equity, in viewing the transactions of men, and in determining the rights and liabilities arising therefrom, looks at the *real intent* of the parties as constituting the essential substance, and not at the mere external form.'' There can be no dispute about the general doctrine that where a greater and a less estate, held in the same right, meet in the same person, without any intermediate estate, a merger takes place by operation of law, and the lesser estate ceases to exist. But in equity, the question of such merger is made to turn upon the intention of the party in whom such estates vest, and in many situations the intention to prevent a merger is inferred from circumstances indicating that the interest of the party will be best subserved by the avoidance of a merger. 2 Pomeroy, Eq. Jurisp. §788.

Pomeroy further says: "While the intention controls, it must be understood as the intention existing at the time the two interests came together * * *. If there is no expression of an intention at the time, then all the circumstances will be considered, in order to discover what is for the best interests of the party.'' 2 Pomeroy, Eq. Jurisp. §792. The same author says: "When a life tenant becomes entitled to a mortgage or other charge upon the entire inheritance, no presumption of a merger arises. The transaction is presumed to be for his own benefit. The security does not merge, but remains in his hands a valid encumbrance which he may enforce against the inheritance. The same rule applies to every one who has only a partial interest in the land subject to a charge, such as a tenant in common or a lessee.'' 2 Pomeroy, Eq. Jurisp. §795. See, also, 2 Pomeroy, Eq. Jurisp. §799.

We are unable to find any case where the question of merger is presented in relation to facts exactly like those peculiar to this case. Where equity is invoked to change the effect of written instruments, it must

appear that right and justice will be thereby promoted. Equity will interpose to prevent a merger in order thereby to do substantial justice. 2 Pomeroy, Eq. Jurisp. §794; *Forthman* v. *Deters* (1903), 206 Ill. 159, 171, 69 N. E. 97, 99 Am. St. 145. The clearest intention to hold the buildings as personal property is manifest at every stage of the several transactions ending with the sale and transfer of the buildings to appellant. By the finding of facts each separate owner of the buildings is shown to have paid a valuable consideration for them. The testator who devised the real estate to appellees had himself made the contract by which the buildings were personal property and they were the property of the tenant at the time of Conwell's death, and the probate of his will by which appellees obtain title. Without the buildings they may obtain all that was bequeathed to them. To deprive appellant of them he must at least lose whatever of value he surrendered for them. Therefore if we balance equities, appellant is in a better situation than appellees. If we consider intention as expressed by the language of the instruments and the conduct of the parties, it clearly favors the conclusion that the buildings in question were originally, have continued to be and now are personal property. If a life tenant may acquire and hold a lien against the real estate in which he holds such estate, without a merger of such claim, we see no reason in law or equity that will prevent his acquiring a building that is personal property and holding and disposing of it as such, where it is not detrimental to his interests so to do, where it promotes rather than prevents equity, and where the evident intention was to acquire, hold and dispose of the improvements as personal property.

The purchase of the buildings by the life tenant, and the sale thereof, as personal property, was consistent with the intention of the parties to the original lease, that the buildings were to be chattels, separate and apart from the real estate. She took them in payment of a debt, and by the

same instrument gave a further lease upon the real estate upon which they stand. She did not therefore purchase an outstanding leasehold estate, but did purchase the buildings under circumstances that show a clear intention to hold them in the same way they previously had been held by the tenants who had owned them. She soon thereafter sold and transferred the buildings to appellant for a valuable consideration, by an instrument which designated the buildings as personal property, separate and distinct from her life estate acquired by the will of her father. True, the instrument by which appellant obtained title to the buildings could not change them from realty to personal property, if they had previously become a part of the real estate. But since the preceding transactions and the conduct of the parties are in harmony with the idea that the buildings transferred are personal property, the language of the instrument should be taken, to mean what it clearly indicates. It is

17. also contended that the facts, that the life tenant purchased the buildings and they remained on the lot up to the time of her death, show that they belong to the remaindermen as a part of the real estate. We have held that the facts found show that the buildings were and are personal property; that the right to claim them as such has not been forfeited and that the title to the buildings has not merged into that of the real estate on which they stand. If we are right in these conclusions, appellees can gain nothing by the foregoing contention.

It may be stated as a general proposition of law that permanent improvements, made by a life tenant, cannot be charged to the remainderman, without his consent,

18. express or implied, and that upon the termination of the life estate, such improvements pass as a part of the realty. 19 Cyc. 1064; 16 Am. and Eng. Ency. Law 117; *Parish* v. *Camplin* (1894), 139 Ind. 1, 15, 37 N. E. 607. But this general proposition is not applicable to the facts

of this case.   It is not shown that the life tenant purchased, or made, any improvements to the real estate in the ordinary meaning of that term, but bought and sold the buildings as personal property, and therefore did not own them at the time of her death.   After finding the specific facts as above stated, the court found the ultimate fact of ownership and stated the undivided interest of each owner to be in accordance with his interest in the fee.   But he also found that appellant owns whatever interest in said buildings, Anna Merrell transferred to him.   The finding of facts must be considered as a whole, and when so considered shows that in addition to his interest in the fee, appellant owns the improvements consisting of the livery barn and shed attached thereto.   *Mount* v. *Board, etc.* (1907), 168 Ind. 661, 666, 80 N. E. 629, 14 L. R. A. (N. S.) 483.   We therefore conclude that the court erred in its conclusions of law.   The judgment is therefore reversed with instructions to the lower court to restate its conclusions of law in favor of appellant and to render judgment upon such conclusions, and for further proceedings, not inconsistent with this opinion.

Ibach, C. J., Adams, Lairy, Hottel and Shea, JJ., concur.

NOTE.—Reported in 101 N. E. 152. See, also, under (2) 24 Cyc. 1357, 1359; (3) 24 Cyc. 1348; (4) 24 Cyc. 1361, 1362; (5, 11) 19 Cyc. 1068; (6) 19 Cyc. 1045, 1047; (7) 19 Cyc. 1048; (8) 19 Cyc. 1064; (9) 16 Cyc. 665; (14) 16 Cyc. 666; (18) 16 Cyc. 630; (19) 38 Cyc. 1966. As to what are fixtures, see 14 Am. Dec. 303; 17 Am. Dec. 686; 24 Am. Rep. 726. As to effect of agreement that fixtures shall retain character of personal property, see 84 Am. St. 877. As to effect of renewing tenancy without reserving right to remove fixtures, see 1 L. R. A. (N. S.) 1192; 17 L. R. A. (N. S.) 1135. As to acceptance of rent accruing after cause for forfeiture, with knowledge of such cause, as waiver of forfeiture, see 11 L. R. A. (N. S.) 831. And for delay of landlord in enforcing forfeiture as waiver of breach, see 24 L. R. A. (N. S.) 1063. As to new lease affecting the right to remove fixtures, see 3 Ann. Cas. 331; 20 Ann. Cas. 769.