**DUTCHMEN MANUFACTURING, INC., Appellant–Defendant,**

v.

**Chad REYNOLDS and Don Reynolds, Appellees–Plaintiffs.**

**No. 20A05–0404–CV–202.**

Court of Appeals of Indiana.

Dec. 22, 2004.

Rehearing Denied Feb. 22, 2005.

Tracy D. Knox, D. Michael Anderson, Barnes & Thornburg LLP, South Bend, IN, Attorneys for Appellant.

Patrick F. O'Leary, Goshen, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Dutchmen Manufacturing, Inc. (Dutchmen) appeals the trial court's denial of its motion for summary judgment against appellees-plaintiffs Chad Reynolds (Reynolds) and Don Reynolds. Specifically, Dutchmen raises three issues,[1] one of which we find dispositive: whether the scaffolding at issue was a chattel for purposes of Section 388 of the Restatement (Second) of Torts.[2] Finding that the scaffolding had merged into the real estate, we reverse and remand to the trial court with instructions that judgment be entered in favor of Dutchmen.

### FACTS

Dutchmen leased a manufacturing facility in Goshen pursuant to a written lease agreement with Chapman Realty, Inc. (Chapman). While it occupied the premises, Dutchmen installed scaffolding for its sole use in manufacturing recreational vehicles. Dutchmen employees built and maintained the scaffolding during the period of Dutchmen's occupancy, but the date it was made and the identities of the employees who built it are not known. The scaffolding was made primarily of steel and was affixed to the ceiling beams in the premises.

Dutchmen vacated the premises when its lease with Chapman expired on February 28, 1999. The lease required Dutchmen to remove all personal property and trade fixtures at the end of the lease or to pay Chapman for the removal of all such property. The lease also provided that any property not so removed would become the property of Chapman. Upon vacating the premises, Dutchmen left the scaffolding for the use of Keystone RV Company (Keystone), a manufacturer of travel trailers that was to be the next lessee of the premises. Because of this agreement between Dutchmen and Keystone, Chapman did not charge Dutchmen to leave the scaffolding. Dutchmen intended to abandon the scaffolding in the premises, and Keystone intended to accept ownership of the scaffolding only after it had negotiated and signed a lease with Chapman.

Keystone signed a lease with Chapman on March 14, 1999, which gave it possession of the premises on May 3, 1999. On December 14, 1999, Reynolds was working for Keystone as an electrician on the assembly line. He installed wiring beneath the trailers. After Reynolds emerged from beneath the trailer, he was struck on the head by a falling scaffolding that had broken loose from its mounting. Reynolds was not directly beneath the scaffolding when it failed, but to the side of it. The scaffolding failed while it was being raised to permit the trailer to be pushed to the

---

1. Dutchmen also contends that the trial court should be reversed because Dutchmen did not owe Reynolds a duty of care because his employer accepted the scaffolding "AS IS" in its commercial lease agreement. Because we reverse based on Dutchmen's section 388 of the Restatement (Second) of Torts argument, we do not need to reach this issue.

2. There is a Restatement (Third) of Torts, but it does not address Section 388.

next workstation. The scaffolding unit was raised and lowered by means of a hoist chain and motor approximately twelve times a day. Reynolds and Don Reynolds, Reynolds's father who also worked for Keystone, testified that they were aware of dangers associated with the scaffolding, of their belief that something was wrong with it, and of the Keystone policy not to go beneath the scaffolding. Appellant's App. p. 601, 604.

According to Keystone's employee injury report, a weld in the scaffolding failed, causing it to fall to the floor: "A pipe inside the support tube for the center arm of the scaffold broke." Appellant's App. p. 424. Keystone's engineers determined that the inner tube fractured due to "improper welding procedure." Appellant's App. p. 373. The defective weld was completely concealed from view by the outer tube and an end cap at the time the unit was assembled.

On November 28, 2000, Reynolds and Don Reynolds filed a complaint against Chapman and Dutchmen, alleging, among other things, that Dutchmen was liable for the injuries because it had constructed and installed an allegedly defective scaffolding in a building that it formerly leased from Chapman. On October 29, 2001, Dutchmen moved for summary judgment on all of the plaintiffs' claims and theories of liability, arguing that Dutchmen did not owe them a duty and that Dutchmen was not negligent per se. At the hearing on this motion, Reynolds filed a supplemental memorandum of law, alleging for the first time that Dutchmen was liable to Reynolds pursuant to Section 388 of the Restatement (Second) of Torts, which essentially provides that one who provides a chattel to a third person is subject to liability for physical harm caused by the use of the chattel if the supplier knew it was likely to be dangerous and has no reason to believe

the other party would realize it was dangerous. Because Reynolds had not raised this theory previously, Dutchmen had not addressed that issue.

On December 11, 2002, the trial court granted Dutchmen's motion for summary judgment on all of the plaintiffs' claims that were the subject of the original motion of summary judgment. Dutchmen filed a supplemental motion for summary judgment on July 28, 2003, addressing plaintiffs' Section 388 claims. Dutchmen alleged that the scaffolding was not a chattel, that Keystone was aware of the dangers of the scaffolding although Dutchmen was not, and that Keystone had accepted the premises "AS IS." Appellant's App. p. 467–80. The trial court denied Dutchmen's motion on February 19, 2004. Dutchmen sought interlocutory appeal of this order on March 3, 2003, and we accepted jurisdiction of the appeal on May 17, 2004.

## DISCUSSION AND DECISION

Dutchmen contends that the trial court erred in denying its motion for summary judgment because Reynolds failed to prove an essential element of Section 388. Specifically, Dutchmen argues that the scaffolding at issue was not a chattel for purposes of Section 388.

When reviewing the grant or denial of a motion for summary judgment, we use the same standard as the trial court. *Bastin v. First Indiana Bank,* 694 N.E.2d 740, 743 (Ind.Ct.App.1998), *trans. denied.* Summary judgment is appropriate only if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Hemingway v. Sandoe,* 676 N.E.2d 368, 369 (Ind.Ct. App.1997). We will construe the designated evidence liberally in the light most favorable to the non-moving party. *Id.* We

will affirm summary judgment if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *Inlow v. Inlow*, 797 N.E.2d 810, 818 (Ind.Ct.App.2003), *trans. denied.*

Section 388 states in relevant part:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition.

Dutchmen argues that the scaffolding is not a chattel for the purposes of Section 388. Specifically, Dutchmen contends that the scaffolding became part of the real estate by operation of law when it failed to remove the scaffolding.

■■■ In its December 11, 2002 order, the trial court concluded, and the parties agree, that the scaffolding was a trade fixture. A trade fixture is personal property—a chattel—placed on the premises by a tenant that can be removed without substantial or permanent damage to the premises and is capable of being set up or used in business elsewhere. *Dinsmore v. Lake Elec. Co., Inc.*, 719 N.E.2d 1282, 1287 (Ind.Ct.App.1999). However, when a tenant fails to remove trade fixtures annexed to the demised premises within the proper time, the title to the fixtures merges in the real property and vests in the landlord, notwithstanding the fact that the fixtures were personal property up to the time of the forfeiture. *Merrell v. Garver*, 54 Ind. App. 514, 523, 101 N.E. 152, 155 (1913). Additionally, a tenant also renounces his right to remove fixtures placed by him on the demised premises by surrendering his leasehold interest to the landlord without reservation. *Id.* Thus, the failure to remove trade fixtures prior to the time stated in the lease causes title to the trade fixtures to immediately merge into the underlying real estate by operation of law. *See Id.*, 54 Ind.App. at 525, 101 N.E. at 156.

■■ Here, the lease required Dutchmen to remove all fixtures "at any time prior to or upon termination or expiration of" the lease. Appellant's App. p. 509. The lease further stated that "[a]ny such property not so removed shall become the property of [Chapman]." *Id.* The lease expired on February 28, 1999, and Dutchmen did not remove the scaffolding from the premises. *Id.* at 496, 563. Keystone and Dutchmen had discussed the possibility of the sale of the scaffolding to Keystone, but no such deal was ever reached. *Id.* at 497. And Keystone did not intend to accept the scaffolding unless and until it signed a lease with Chapman. *Id.* at 566. Keystone signed a lease with Chapman on March 14, 1999, more than two weeks after Dutchmen abandoned the premises. *Id.* at 498. Thus, Dutchmen abandoned the scaffolding, and Keystone later gained possession of it and of the premises. But, by operation of law, the scaffolding had merged into the real estate at the moment that the lease expired without Dutchmen removing the scaffolding. *Merrell*, 54 Ind.App. at 525, 101 N.E. at 156. Because the scaffolding ceased to be personal property on February 28, 1999, Dutchmen could not have supplied a chattel as required by Section 388. Therefore, this element of Reynolds's claim is negated, and the trial

court erred in denying summary judgment on this issue.

The judgment of the trial court is reversed and remanded with orders that judgment be entered in favor of Dutchmen.

SHARPNACK, J., and FRIEDLANDER, J., concur.