CARL D. SHIELDS and VIRGINIA S. SHIELDS, his wife,
Plaintiffs,

*vs.*

WELSHIRE DEVELOPMENT COMPANY, a Corporation of the State of
Delaware, and W. PERCIVAL JOHNSON & SON, INC., a Corporation of the State of Delaware,
Defendants.

*September 10, 1958.*

L. *Robert Hopkins,* Wilmington, for plaintiffs.

*Benjamin N. Brown* and *Richard J. Baker,* Wilmington, for defendants.

SEITZ, Chancellor: Plaintiffs, in reliance upon deed restrictions, seek to restrain defendants from maintaining sample houses and from erecting structures of a type which they contend are inharmonious with the surrounding structures.

In July of 1937, Welshire Incorporated, through a transfer of deeds to and from William W. Gilbert and wife, divided the so-called "Welshire" tract into building lots and placed general building restrictions on all of the lots therein. From 1937 until 1958, Welshire Incorporated sold property for only four houses and, pursuant to a restriction provision, approved the structures to be erected thereon. A high grade development was contemplated. See *Welshire v. Harbison,* 32 *Del.Ch.* 362, 88 *A.2d* 121, affirmed 33 *Del.Ch.* 199, 91 *A.2d* 404.

When, in 1950, Welshire Incorporated sold plaintiffs the property on which they erected their home, it was made subject to a a special agreement by which the Gilbert restrictions were extinguished and another set of restrictions substituted ("Shields restrictions").

Defendants assert that in view of the agreement executed by plaintiffs when they purchased their property, they are governed by its provisions (Shields restrictions) and are not entitled to assert rights under the earlier Gilbert restrictions. Since it was a matter of contract as between the corporation and plaintiffs, there is no reason why it should not bind them. I conclude that plaintiffs' rights must be found in the Shields restrictions.

About March 12, 1958, a corporation known as Welshire Development Company ("Development"), a defendant, purchased the 72 remaining lots in Welshire from Welshire Incorporated and took an assignment of all rights of the assignor. Parenthetically, Welshire Incorporated has since dissolved. Under the practice adopted Development conveyed certain lots to the other defendant, W. Percival Johnson & Son, Inc. ("Johnson") which thereupon erected houses thereon. To date about six houses have been built or are under construction. It may be noted that Development and Johnson are owned by the same parties.

Plaintiffs, who erected a home on their property about 1951, make certain claims against both defendants, but I think that technically they must be viewed as being asserted against Johnson rather than Development since they deal only with action on the lots conveyed to Johnson. Reference herein to "defendant" will therefore refer only to Johnson unless otherwise indicated.

Plaintiffs claim the following violations of restrictions:

1. The use of "sample houses" violates the restrictions which limit the use of the premises to "private residence purposes only (Par. 1) or "strictly limited to private residential purposes only". (Par. 6) ;

2. The use of sample houses will constitute a nuisance contrary to the provisions of the restrictions ;

3. Johnson has failed to obtain approval of its building plans from Welshire, Inc., contrary to the provisions of the restrictions ;

4. The structures erected by the defendant are "inharmonious" and thus violate the restrictions providing certain standards for "harmonious" structures.

Plaintiffs also contend that the sample house use of the land will create a common law nuisance.

Defendant contends that plaintiffs' claims are without merit. Further, it asserts that plaintiffs are themselves violating a restriction and are therefore barred from bringing this action. Defendant also says that plaintiffs are estopped from enforcing the restrictions because they agreed to a provision that Welshire Incorporated could amend or revoke the restrictions at any time, which right, it says, was duly assigned to Development. Finally, both defendants counterclaim for an injunction preventing the plaintiffs from using their home for business purposes.

This is the decision after final hearing.

I first consider plaintiffs' contention that the use of sample houses on certain lots in Welshire violates the restriction limiting the use of the land "for private residence purposes only", or the restriction that such use should be "strictly limited to private residential purposes". Defendant admits that it is using certain houses as sample houses but says that it is only "for a temporary period and will not extend past the time the defendants are actually constructing houses in the development". Johnson says the use of sample houses is an incidental part of the business of building houses and not a business use within the meaning of the restrictions.

The restriction provides that the use of such land shall be strictly limited to private residential purposes only. Certainly, the use of the land for sample houses is not using it for private residential purposes only. Whether the use is a business use is therefore not strictly before the court but obviously it partakes of a business use and defendant necessarily so concedes.

Defendant relies upon the case of *City of New York v. Jack Porter Associates,* 5 *Misc.2d* 633, 161 *N.Y.S.2d* 731. The language of the court relied upon by defendant was a dictum to the effect that the use of a sample house in a housing development would not violate a "business use" provision in the zoning law, although the court agreed the use was for business purposes. The court, in fact, held that a sample house located outside the development, but within the land area zoned against business use, violated the zoning provision prohibiting business use. Passing over the logic of the court's distinction, it appears that the court agreed that the use of a sample house was a business use but felt that a zoning provision which would outlaw a sample house within a development would be unreasonable. In contrast, we are dealing with a voluntarily imposed and accepted deed restriction. There is no attack upon the validity of the restriction relied upon by plaintiffs. I re-emphasize that plaintiffs are relying upon the "residential-use only" restriction and not the business use restriction which defendant emphasizes.

The question then is whether the use of sample houses is fairly within the provisions of the restriction limiting the use of the property to residential purposes only. While defendant adduced testimony to the effect that the sample houses now erected would be sold if anyone wanted to buy them, the fact remains that there is no reasonable assurance that they will not continue to be used as sample houses for an indefinite time. Defendant so concedes. Thus a protracted non-residential use is fairly contemplated.

Defendant asks the court to take judicial note of the fact that sample houses are used quite generally to sell homes in a development. I fully agree, but this does not answer our problem. It is undisputed that the original developer here visualized and to a modest extent approved a custom-home type of development. Plaintiffs purchased their property and erected their home on that basis.

In the ordinary development, where sample houses are used from the outset, it may well be that purchasers would be estopped, i. e., not permitted in law, to complain about them. Or, they might be subject

to other defenses. Moreover, a developer is perfectly free, in imposing restrictions, to reserve the right to erect sample homes. Finally, only when an action is brought is the court called upon to determine whether certain action is contrary to governing restrictions. Thus the "practice" cannot override a clear restriction if the issue is seasonably raised. Johnson went ahead knowing of plaintiffs' threats. Defendants do not assert the defense of laches here.

I conclude that the use of the land in Welshire for sample houses is in violation of the governing restrictions. The court reaches this conclusion with some reluctance, but it must be noted that the defendants purchased this land with full knowledge of the governing restrictions.

Defendants say, in effect, that the problem is academic because of the provision in the Shields restrictions which they say permits the amendment, etc., of such restrictions by them alone. I take it that they are suggesting that the restrictions could be amended to permit the maintenance of sample houses. The answer at this time must be that, so far as appears, Development has not purported to amend under that provision. The court will not speculate as to such matter.

The defendant, Johnson, will be enjoined from maintaining sample houses on the tract. Of course, defendant is free to build and offer houses for sale therein, including the houses now used as sample houses.

In view of my ruling it is not necessary to consider plaintiffs' contentions that the maintenance of sample houses is a "nuisance" within the language of the restrictions or at common law.

I now consider plaintiffs' contention that Johnson has failed to obtain approval of its building plans from Welshire Incorporated, although, so required by the restrictions; that Welshire Incorporated being dissolved, the approval power passed to plaintiffs and other original grantees; that their approval was not obtained and thus the restriction is being violated by defendant.

The pertinent portion of the so-called "plan-approval" restriction appears in both the Gilbert and Shields restrictions in the following language:

> "No building, fence, wall or other structure shall be commenced, erected or maintained, nor shall any addition to or change or alteration therein be made, until the plans and specifications, showing the nature, kind, shape, height, materials, floor plans, color scheme, location and approximate cost of said structure and also the grading plan of the lot to be built on, shall have been submitted to and approved in writing by the party of the first part, and a copy thereof, as finally approved, lodged permanently with the party of the first part."

Neither the Gilbert nor the Shields restrictions, when imposed by Welshire Incorporated, reserved a right in the party of the first part to assign the rights contained in the quoted provision. Nevertheless, when Welshire Incorporated sold the remaining property to the defendant, Development, this year, it also purported to assign all of its rights under the agreements, which, I take it, include the right to approve plans. Although, Johnson apparently did not submit its plans formally to Development for approval, I shall imply such approval since there is an admitted identity of interests between Development and Johnson. Moreover, plaintiffs make no point of this fact. Certainly defendant should in the future comply with the restriction formalities.

Plaintiffs contend that the plan-approval provision of the restrictions was not assignable or transferable by Welshire Incorporated, and that, consequently, the power did not pass to Development pursuant to the assignment. They argue that when Welshire Incorporated dissolved, all prior purchasers of land in Welshire became entitled to approve plans.

It is true that there is no specific provision in the restrictions reserving the right in Welshire Incorporated as the party of the first part to assign its right or duty under the plan-approval restriction.

Does this mean that the purported assignment to the defendant, Development, is therefore invalid?

It is not easy to classify the nature of the plan-approval provision. In particular, it is difficult to say whether the provision is either a contractual right or a duty or whether it partakes of both. At the outset, at least, the provision was primarily for the benefit of Welshire Incorporated. It enabled it to preserve the value of unsold lots. But it must be apparent that it was also of some benefit to the purchasers.

Whether the plan-approval provision be viewed as a right or a duty residing in Welshire Incorporated, or some combination of both, I am satisfied that it was assignable without the existence of a reservation of such right. I say this because, to the extent it was a right, it would appear that the original grantees, including plaintiffs, would have no right to complain of the assignment under the circumstances. To the extent this may be viewed as a duty, I believe it is also assignable because it was to be exercised originally by a corporation. Since a corporation must act through agents, it is evident that the original grantees had no assurance as to the continuity of ownership of the corporation and therefore of its agents. Thus, approval action by different agents was reasonably to be anticipated. A purely personal reliance was therefore not involved. Nor is the power lodged in an entity having no reasonable contact with the property involved. After all, the assignee, Development, owns nearly all the land in the development.

I therefore conclude that the plan-approval power passed to the defendant, Development, pursuant to the assignment. Consequently, plaintiffs cannot claim the right to approve plans since that power now resides exclusively in Development.

I should note that plaintiffs emphasized the fact that the president of the now dissolved Welshire Incorporated, stated in a trial some years ago, apparently contrary to his present testimony, that he felt that he (the corporation, I presume) would still have control of the approval of plans even if he sold all the lots to one builder. This testi-

mony is irrelevant because of my conclusion, inter alia, that he caused the corporation to assign its rights to Development and because the restriction language fairly construed must be controlling here.

Finally, I consider plaintiffs' contention that the houses erected by defendant, Johnson, violate the restriction providing certain standards for harmonious structures. Plaintiffs principally rely on the following language in the restrictions:

> "The party of the first part shall have the right to refuse to approve any such plans or specifications or grading plans which are not suitable or desirable in its opinion, for aesthetic or other reasons; and in so passing upon such plans, specifications or grading plans it shall have the right to take in consideration the suitability of the proposed buildings or other structure, and of the materials of which it is to be built, to the site upon which it is proposed to erect the same, the harmony thereof with the surroundings and the effect of the building or other structure, as planned, on the outlook from the adjacent or neighboring property."

While the power to approve plans passed by assignment to the defendant, Development, I believe Development's approval of plans must be very carefully scrutinized by the court where, as here, it is, in effect, approving its own plans because of a common ownership. Nevertheless, the approval given should not be upset unless unreasonable or not approved in good faith. Compare *Alliegro v. Home Owners of Edgewood Hills,* 35 *Del.Ch.* 543, 122 *A.2d* 910; *Kirkley v. Seipelt,* 212 *Md.* 127, 128 *A.2d* 430.

Plaintiffs say that the structure erected on the lot adjoining theirs is inharmonious with existing residences due to its largeness, exterior building materials, style and placement of windows. I should note that plaintiffs also claim that the houses built by Johnson are subject to many structural infirmities.

In aid of a better understanding of the problem the court viewed the properties involved at some length.

The plaintiffs own a very low ranch-type stone house of substance. Another ranch-type house directly across the street is somewhat higher. These two houses, which were built several years ago, are the only two which are located in the portion of the tract where Johnson has commenced to erect houses. Johnson has built three types of homes along the same street, viz., ranch type, story and a half and two story.

I am satisfied that plaintiffs' real grievance is that Johnson erected a two story house on the lot next to them. To plaintiffs' minds this tends to create an inharmonious contrast with what I consider to be the particularly low structure erected by plaintiffs.

Clearly such matters are generally within the realm of personal taste. I think the contrast between the heights of plaintiffs' house and the one built next door by defendant might have been such as to justify the conclusion that they were inharmonious had the lots been small and the structures positioned differently on the lots. Actually, the lots are quite large; there being a 30 foot side set back provision. Moreover, the relative positions of the two houses (plaintiffs being on an angle and the adjacent one facing the street) minimize any lack of harmony. I do not find such a lack of harmony in the height of the structures as would warrant a finding that the defendant's house violates the restriction.

Also in connection with the adjoining house, plaintiffs complain about the existence and position of windows in the wall facing their property. From many portions of the interior of plaintiffs' house you cannot even see the adjoining house. In any event, I cannot see why a house should be without windows in order to give plaintiffs what I deem to be "excessive" privacy. Plaintiffs' windows are at least 60 feet from the adjoining house. The placing of the windows is a matter of taste and internal needs. Plaintiffs cannot substitute their desires under the circumstances.

Nor does the fact that the houses erected are of various materials other than stone justify the conclusion that they are inharmonious.

The approval of an all-stone house for plaintiffs did not fasten that type of material on the whole development. I might say that most of the houses being built contain much more living area than does plaintiffs' house and certainly are at least within the price range of their home, objectively viewed.

 Based upon my view and the testimony, including that of the architectural experts, I am satisfied that the implied approval by Development of defendant's structures was not unreasonable or in bad faith.

Plaintiffs pointed to many alleged structural deficiencies in Johnson's houses. I am satisfied that such allegations are irrelevant to a determination of the issues raised under the plan-approval provision unless they are so "bad" as to cause the structure to violate the standards set forth in that restriction. I do not so find. Nor do I mean to imply that there are any deficiencies when tested by minimum standards. I consider it unnecessary to decide that point.

Defendants say that plaintiffs should not be heard because they do not come into court with clean hands. They say that plaintiff, Carl Shields, is conducting his business as a consulting engineer from his home in violation of the no-business use restriction. This is also the basis of defendants' counterclaim for an injunction.

There is nothing about the structure of the house or the external appearance of plaintiffs' property which suggests a business use. While some people stop at the house to see plaintiff in connection with his activity as a consulting engineer, it appears that they are few in number and their visits are infrequent. It would be like a few clients of a professional man stopping at his home. They do not create the appearance of nonresidential use. The house is in fact used as the residence of plaintiffs and their children.

In advertising his business in the phone book and on his business cards the plaintiff does give his home address but I am satisfied that the actual activity involved both as to scope and type is so modest that

it does not constitute a real violation of the restriction prohibiting a business use.

In my view the violation, if any, by plaintiff is so slight as to be de minimis. It cannot compare with the scope of the violation by defendant of the restriction relied upon by plaintiffs. Compare *Dalstan v. Circle Amusement Co.,* 130 *N.J.Eq.* 354, 22 *A.2d* 245; *Maganini v. Hodgson,* 138 *Conn.* 188, 82 *A.2d* 801.

I therefore conclude that plaintiffs are not barred from maintaining this action because of the limited use made of their premises in connection with plaintiff Carl Shields's modest and declining activity as a consulting engineer. I further conclude for the same reasons that defendants' counterclaim should be dismissed.

Present order on notice.