## SHERWOOD ESTATES HOMES ASSOCIATION, INC., Appellant,

v.

## Delbert L. SCHMIDT and Anna Schmidt, Respondents.

### No. KCD 30377.

Missouri Court of Appeals, Western District.

Dec. 3, 1979.

Motion for Rehearing and/or Transfer Denied Dec. 31, 1979.

Application to Transfer Denied Feb. 11, 1980.

Michael P. Keleher, Duggan, Keleher & Svetlic, Kansas City, for appellant.

Robert G. Duncan, Duncan, Russell & Reardon, Gladstone, for respondents.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

SOMERVILLE, Presiding Judge.

This case is presented on appeal via an agreed "statement of the case" pursuant to Rule 81.13.

The plaintiff below, Sherwood Estates Homes Association, Inc. (hereinafter Association), by way of a two count petition, sought to enjoin defendants below, Delbert L. Schmidt and Anna Schmidt (hereinafter Schmidts), from violating two restrictive covenants running with the land appertaining to certain real property owned by them

(Schmidts) in "Sherwood Estates, an addition in and to the City of Kansas City, Clay County, Missouri".

The two restrictive covenants, to which general reference is made above, are contained in a "Declaration of Restrictions" filed and recorded of record on March 29, 1955, in the Office of the Recorder of Deeds of Clay County, Missouri, by James H. Stanton Construction Company, Inc. (hereinafter Stanton), original owner and developer of Sherwood Estates, and, so far as here pertinent, read as follows:

"VII. APPROVAL OF PLANS

No building, fence, wall or other structure shall be commenced, erected or maintained, nor shall any addition thereto or change or alterations therein be made, until plans and specifications, color scheme, plot plan and grading plan therefor, or other information satisfactory to the company shall have been submitted to and approved in writing by the Company . . . ."

"XIII. SIGNS, BILLBOARDS AND MISCELLANEOUS PROVISIONS

No radio or television aerial wire or structure shall be maintained more than five (5) feet higher than the roof of any structure, nor in front of the building limit line."

The trial court found in favor of the Association and against the Schmidts under Count One of the Association's petition and "perpetually enjoined and restrained" Schmidts "from maintaining any radio aerial wire or antennas more than five feet higher than the roof of their residence", and further ordered the Schmidts to remove two radio antennas from the roof of their residence, or, in the alternative, to lower each of said antennas so as not to extend more than five feet above the roof of their residence. On the other hand, the trial court found in favor of the Schmidts and against the Association under Count Two of the Association's petition whereby the Association sought to permanently enjoin Schmidts from maintaining a "patio cover on their property" in violation of Restriction VII because approval in writing to erect the same had not been obtained from the Association.

The only appeal in this case is one taken by the Association with respect to the adverse judgment rendered and entered against it under Count Two of its petition. No appeal was taken by Schmidts with respect to the adverse judgment rendered against them under Count One of the Association's petition.

Written "Findings of Fact and Conclusions of Law" made and entered by the trial court in conjunction with its bifurcated judgment contain two "Conclusions of Law" which bear specific mention, the first because of its general significance as to the Association's right or standing to enforce the restrictive covenants in question, and the second because of its general significance in explaining the basis or reasoning behind the judgment denying the Association the injunctive relief sought under Count Two of its petition. The *first* of these two significant "Conclusions of Law" reads as follows: "The James H. Stanton Construction Company, Inc. assigned the right to enforce the restrictions on the use of defendants' land to plaintiff by virtue of the Sherwood Estates Homes Association Declaration (Exhibit B to plaintiff's Exhibit One)." The *second* of these two significant "Conclusions of Law" reads as follows: "The term 'company' as used in Restriction Number VII means the James H. Stanton Construction Company and therefore excuses defendants from complying with Restriction Number VII in regard to the patio cover."

On appeal the Association contends that assignment of the right to enforce Restriction VII ipso facto carried with it the right to grant or deny approval of plans and specifications and that it succeeded to all powers of approval previously possessed by Stanton. Conversely, the Association contends that the second of the two significant "Conclusions of law" made and entered by the trial court was erroneous. The

Schmidts respond by arguing (1) that "there was no evidence that . . . [Association] was the assignee of the James H. Stanton Construction Company, Inc. and therefore entitled to enforce the Declaration of Restrictions" and (2) that "the trial court did not err in finding that the term 'Company' in the Declaration of Restrictions meant the James H. Stanton Construction Company, Inc. and not . . . [the Association]."

Schmidts' present claim of lack of evidence as to an assignment of the power to enforce the Restrictions to the Association is incongruous, particularly in view of the fact that they did not appeal from the adverse judgment rendered against them under Count One of the Association's petition. Moreover, as expressed by the Association in an obvious state of consternation, submission of this case on appeal upon an agreed "statement of the case" pursuant to Rule 81.13 presages its submission on appeal on less than all the facts which were before the trial court. The incongruity of the Schmidts' position, as it turns out, is an unexpected talisman for the Association.

■ Insofar as this appeal is concerned there is but one justiciable issue. Does the term "company" in Restriction VII include the Association? This for the reason that the Schmidts, by application of the doctrine of estoppel by verdict, are barred from presently attacking the Association's right to enforce Restriction No. VII on the ground that it was not the assignee of Stanton. As enunciated in *Smith v. Preis*, 396 S.W.2d 636, 640 (Mo.1965), "a judgment between the same parties on a different cause of action is binding as to the facts actually decided, and necessarily determined in rendering the judgment under what is called estoppel by verdict. . ." See also: *Schmitt v. Pierce*, 379 S.W.2d 548, 550 (Mo. 1964); *Abeles v. Wurdack*, 285 S.W.2d 544, 546 (Mo.1956); and *State ex rel. Gott v. Fidelity & Deposit Co. of Baltimore, Md.*, 317 Mo. 1078, 298 S.W. 83, 87 (Mo.1927). See generally, *Stover v. Patrick*, 459 S.W.2d 393, 397 (Mo. banc 1970), for application of the doctrine of res judicata under analogous circumstances.

This court perceives the decree and judgment in favor of the Association and against the Schmidts under Count One of the Association's petition, and the judgment in favor of the Schmidts and against the Association under Count Two of the Association's petition, as judgments between the same parties on different causes of action. As no appeal was taken from the decree and judgment in favor of the Association and against the Schmidts under Count One of the Association's petition, as the same has long since become final, and as the fact "actually decided and necessarily determined" in rendering the decree and judgment in favor of the Association and against the Schmidts under Count One of the Association's petition was that Stanton had assigned the right to enforce the Restrictions to the Association, the fact of said assignment was and is binding upon the Schmidts as to Count Two of the Association's petition by virtue of application of the doctrine of estoppel by verdict and the Schmidts will not presently be heard to take an otherwise inconsistent position during the course of the present appeal.

Attention now focuses on the one remaining issue left on appeal—does the Association by virtue of assignment of the right to enforce said Restrictions succeed to the power of approval and fall within the purview of the term "company" as employed in Restriction VII?

Exhibit B, captioned "Sherwood Estates Homes Association Declaration", filed and recorded of record in the office of the Recorder of Deeds, Clay County, Missouri, which the trial court specifically referred to as the basis for its "Conclusion of Law" that Stanton had "assigned the right to enforce the restrictions" to the Association, contains a preamble expressly declaring, inter alia, that Stanton was desirous of creating and maintaining "Sherwood Estates" as a "residence neighborhood possessing features of more than ordinary value to a residence community". To achieve this end Stanton assigned to the Association the right to enforce all restrictions as evidenced

by the following provision contained in the "Sherwood Estates Homes Association Declaration": "The Association shall have the following powers and duties . . . FIRST: To enforce, either in its own name or in the name of any owner within the district, any or all building restrictions which may have been heretofore, or may hereafter be imposed upon any of the land in said district, . . .".".

Although restrictive covenants "are not favorites of the law", are to "be strictly construed" when "their meaning is properly open to construction", and will not be "extended by implication", the intention of the parties "may be gathered not only from the specific clause under scrutiny but in light of all other provisions" and the principle that restrictions as to the use of real property "should be strictly construed" and "doubts resolved in favor" of its free use "should never be applied in such a way as to defeat the plain purpose of the restriction". *Brasher v. Grover*, 551 S.W.2d 302, 303 (Mo. App.1977). Harking back to the preamble contained in the "Sherwood Estates Homes Association Declaration", the following decisional language in *Skinner v. Henderson*, 556 S.W.2d 730, 734 (Mo.App.1977), possesses special relevancy and meaning: "The purpose of the restrictions in the Briarcliff Indenture, as stated in the preamble, is to retain its status as a 'residential section of the highest class.' While such recitals may not broaden the restrictions, we may consider this expression in the indenture in determining the intent of the instrument. [Citation omitted.] The restriction requiring that owners obtain the approval of the trustees for proposed structures was one of many provisions intended to ensure that the subdivision remain a residential area of high quality and that buildings and structures placed upon the lots be compatible with the area."

■ The vortex of the single remaining issue on appeal has now been reached—did Stanton's assignment of the right to enforce the Restriction to the Association substitute the Association in the place of Stanton as the "company" for the purpose of granting or denying approval as to plans or specifications as prescribed by Restriction VII? Recognition of the obvious purpose of the Restrictions and the avowed intent expressed in the preamble of the "Sherwood Estates Homes Association Declaration" to retain Sherwood Estates' status as a "residence neighborhood possessing features of more than ordinary value to a residence community", gives impetus to the belief that the trial court obviously excluded consideration of both in determining the intent coursing through the "Sherwood Estates Homes Association Declaration" as to the scope and breadth of Stanton's assignment of the power to enforce Restriction VII to the Association.

The power to enforce Restriction VII is a legally sterile power if it does not include the power to grant or withhold approval of plans and specifications falling within its purview. Perhaps no other single restriction is quite so adaptable for perpetuating Sherwood Estates' status as a "residence neighborhood possessing features of more than ordinary value to a residence community". Extraordinary vision is not required to see that Restriction VII was carefully designed to preserve the architectural tone and character of the subdivision, all of which inures to the immeasurable value of the various homeowners in the subdivision.

Stanton was a subdeveloper and builder, and once its role was completed in Sherwood Estates it had an overriding interest in transferring all powers and duties attendant to the Restrictions, and authority to enforce them, to the Association whose membership was comprised of the homeowners in Sherwood Estates. In view of the homeowners' natural community of interest it is impossible to imagine a more suitable repository for such powers, duties and authority. Manifestation of Stanton's intent to substitute the Association in its place for the purpose of assuming and performing all powers and duties associated with the Restrictions, including but not limited to Restriction VII, and the authority to enforce them, permeates the "Sherwood Estates Homes Association Declaration". As

it turned out, Stanton's persistent desire to unburden itself of any continuing responsibility concerning Sherwood Estates was indeed fortunate as Stanton's corporate charter was subsequently forfeited in 1967.

Case authority sustaining an assignment of the power to approve construction plans and specifications by a corporate subdivider without reservation of any right to do so is found in *Shields v. Welshire Development Co.*, 37 Del.Ch. 439, 144 A.2d 759 (1958). In *Shields*, the assignee was a builder who purchased all of the remaining lots in a subdivision. Assignment of the power of approval in the case at hand rests in a far more favorable atmosphere as the assignee is a corporate composite of all the homeowners in Sherwood Estates. The *Shields* case, in sustaining an assignment of the power of approval, had this to say 144 A.2d at 763: "Since a corporation must act through agents, it is evident that the original grantees had no assurance as to the continuity of ownership of the corporation and therefore of its agents. Thus, approval action by different agents was reasonably to be anticipated. A purely personal reliance was therefore not involved."

Schmidts have never asserted that plans and specifications were submitted by them to the Association for approval and that their approval was unreasonably, capriciously or malevolently denied.

Fully aware that appellate review of this court tried case is governed by Rule 73.01, and keenly cognizant of the admonishment contained in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), as to the perimeters of appellate review in such instance, this court is nevertheless constrained to hold that the judgment below denying the Association injunctive relief against the Schmidts as prayed for in Count Two of its petition resulted from an erroneous application of the law to the facts at hand and was *wrong*. More specifically, the trial court's conclusion that the term "company" in Restriction VII meant Stanton and not the Association, notwithstanding the assignment, was a mismatch of law and facts.

The judgment denying the Association injunctive relief against the Schmidts as prayed for in Count Two of the Association's petition is reversed and the cause is remanded to the trial court with instructions to enter a decree and judgment in favor of the Association and against the Schmidts as prayed for in Count Two of the Association's petition.

Reversed and remanded with directions.

All concur.