SUNSHINE REALTY CORPORATION,
d/b/a Charles C. Meek Lumber
Company, a Corporation, Plaintiff,

v.

Robert G. KILLIAN and Joseph Killian,
d/b/a Queen City Car Wash, and James
Wade, Defendants-Respondents,

and

UNION L.P. GAS SYSTEMS, INC., a
Corporation, Defendant and
Third-Party Plaintiff-Appellant,

v.

Betty J. KILLIAN, Third-Party
Defendant-Respondent.

No. 13581.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 22, 1985.

Motion for Rehearing or Transfer to
Supreme Court Denied Nov. 14, 1985.

Application to Transfer Denied
Dec. 17, 1985.

Richard E. Dorr, Springfield, for defendant and third-party plaintiff-appellant.

Warren S. Stafford, Taylor, Stafford & Woody, Springfield, for defendant-respondent James Wade.

Glenn A. Burkart, Bruce E. Hunt, Mann, Walter, Burkart, Weathers & Walter, Springfield, for Defendants-Respondents/Third-party Defendant-Respondent Killian.

Charles C. Shafer, Jr., Charles C. Shafer, III, Kansas City, for defendants-respondents/Cross-claimants Betty and Robert Killian.

FLANIGAN, Judge.

On February 18, 1981, Union L.P. Gas Systems, Inc., ("Union Gas"), converted the engine of a pickup truck owned by James Wade so that the driver could use either propane gas or gasoline as its fuel. On February 28, 1981, Wade drove the truck to a car wash in Springfield. The car wash was owned and operated by a partnership

consisting of Robert Killian and Joseph Killian, d/b/a Queen City Car Wash ("Car Wash"). An explosion occurred when a hose connected to the propane tank on the truck became entangled in an overhead brush inside the car wash. The explosion caused extensive damage to the car wash and to the property of a lumber company next door. The lumber company was owned by Sunshine Realty Company, d/b/a Charles C. Meek Lumber Company ("Meek Lumber"). The explosion also caused the death of Roger Killian, the manager of Car Wash. Roger was survived by his parents, Robert Killian (the same person as the partner) and Betty Killian.

Plaintiff Meek Lumber brought this action against defendants Union Gas, James Wade, and Car Wash. Union Gas, as third party plaintiff, sued several third party defendants, including Betty Killian. Claims against other parties were dismissed prior to and during the trial. Seven claims, some opposed by affirmative defenses, were submitted to the jury. They were:

### CLAIM I (Meek Lumber against Union Gas)

Meek Lumber's claim for property damage. Prior to submission Meek Lumber dismissed with respect to Car Wash and James Wade and this claim was submitted only against Union Gas. The jury returned a verdict in favor of Meek Lumber and against Union Gas for $150,000 actual damages and $200,000 punitive damages.

### CLAIM II (Car Wash against Union Gas)

The crossclaim of Car Wash against Union Gas for property damage. As an affirmative defense Union Gas submitted the contributory negligence of "the employees of" Car Wash. An instruction, given at the request of Union Gas, required the jury to return a verdict for Union Gas if they believed Betty Killian was one of the owners of Car Wash. The jury returned a verdict in favor of Car Wash and against Union Gas for $378,000 actual damages. Car Wash also submitted a claim for punitive damages against Union Gas but the jury denied that claim.

### CLAIM III (Robert and Betty Killian against Union Gas)

The claim of Robert Killian and Betty Killian, parents of Roger Killian, against Union Gas for the wrongful death of Roger. As an affirmative defense to this claim Union Gas submitted the contributory negligence of "the employees of" Car Wash. Roger was one of the employees. The instruction submitting that defense required the jury to find, also, that Betty Killian was one of the owners of the car wash. The jury returned a verdict in favor of Robert Killian and Betty Killian and against Union Gas for $750,000.

### CLAIM IV (Union Gas against Car Wash)

The claim of Union Gas against Car Wash for assessment of the proportion of fault for damages awarded Meek Lumber on Claim I. This claim submitted the negligence of "the employees of" Car Wash. The verdict-director of Union Gas on this claim told the jury that their verdict should also be against Betty Killian if the jury found that she was one of the owners of Car Wash. On this claim the jury found against Union Gas and in favor of Car Wash.

### CLAIM V (Union Gas against Wade)

The claim of Union Gas against James Wade for assessment of the proportion of fault for damages awarded Meek Lumber on Claim I. On this claim the jury found against Union Gas and in favor of James Wade.

### CLAIM VI (Union Gas against Wade)

The claim of Union Gas against James Wade for assessment of the proportion of fault for damages awarded Car Wash on Claim II. On this claim the jury found against Union Gas and in favor of James Wade.

### CLAIM VII (Union Gas against Wade)

The claim of Union Gas against James Wade for assessment of the proportion of fault for damages awarded Robert Killian and Betty Killian on Claim III. On this claim the jury found against Union Gas and in favor of James Wade.

Verdicts A, B, C, D, E, F, and G reflected the findings on the seven claims. Verdicts H, I, and J contain findings with respect to apportionment of fault. In Verdict H the jury found that Union Gas was 100 percent at fault for Claim I, Car Wash was zero percent at fault and James Wade was zero percent at fault. In Verdict I the jury found that Union Gas was 100 percent at fault for Claim II and James Wade was zero percent at fault. In Verdict J the jury found that Union Gas was 100 percent at fault for Claim III and James Wade was zero percent at fault.

The trial court entered judgment upon the verdicts. On September 9, 1983, Union Gas filed a motion for new trial and a motion for judgment notwithstanding the verdict. On December 5, 1983, Meek Lumber and Union Gas settled Claim I. No party to this appeal claims that the mechanics of that settlement affect the issues on appeal.

On December 14, 1983, Car Wash filed a satisfaction of judgment with respect to Claim II and Union Gas withdrew its post-trial motions with respect to Claim II. These events are of paramount significance with respect to the issues on appeal. Also on December 14, 1983, Union Gas, having been denied relief on its other post-trial motions, filed its notice of appeal.

The sole appellant is Union Gas, which asserts error with respect to Claims III, IV, V, VI, and VII. Respondents, on the claims concerning them respectively, are Robert and Betty Killian (Claim III), Robert, Joseph and Betty Killian (Claim IV) and James Wade (Claims V, VI, and VII).

In general, Union Gas alleges error in the following respects: Erroneous instructions were submitted with respect to Claim III and the verdict on Claim III is excessive; improper and derogatory issues were injected into the case by counsel for the other parties to the prejudice of Union Gas; the verdicts on Claims IV, V, VI, and VII were "against the weight of the evidence" and were improper because, "as a matter of law," at least some percentage of fault was established (a) on the part of Wade

and (b) on the part of Robert and Joseph Killian, as the owners of Car Wash, by reason of negligence on the part of the employees of Car Wash.

Respondents Killian argue that Union Gas "is presently barred as a matter of law from maintaining and pursuing this appeal against the respondents Killian because of the operation of the doctrine of collateral estoppel." These respondents assert that the judgment on Claim II, which was satisfied by Union Gas, was based on these findings: (1) The explosion was caused by the negligence of Union Gas; (2) there was no negligence on the part of the employees of Car Wash, including Roger Killian; (3) Betty Killian was not one of the owners of Car Wash. Respondents assert that Union Gas is now bound by those findings and cannot, on this appeal, take any position inconsistent with them.

Respondents further assert that the issue of proportionate fault has been fully litigated and determined by the jury's findings under Verdict I, with respect to Claim II, that Union Gas was 100 percent at fault and James Wade was "zero percent" at fault, and that the satisfaction of the judgment on Claim II precludes re-examination of those issues. Respondents further argue, with respect to Claim III, that the satisfaction of the judgment on Claim II eliminates any issue of contributory negligence on the part of decedent Roger Killian or any of the other employees of Car Wash.

■ Does the satisfaction by Union Gas of the judgment on Claim II entitle respondents to the benefit of the doctrine of collateral estoppel or "issue preclusion?" In *Oates v. Safeco Ins. Co. of America,* 583 S.W.2d 713, 719 (Mo. banc 1979), our supreme court said:

The court in reviewing whether the application of collateral estoppel is appropriate should consider: (1) whether the issue decided in the prior adjudication was *identical* with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party

against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication. . . . Most courts have added a fourth factor to the three enunciated by Chief Justice Traynor in the Bernhard case: whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. (Citing authorities.)

The absence of the "fourth factor" has been held to preclude the application of the doctrine. *City of St. Joseph v. Kaw Valley Tunneling, Inc.*, 660 S.W.2d 26, 32 (Mo. App.1983). In *Hudson v. Carr*, 668 S.W.2d 68, 70 (Mo. banc 1984), our supreme court said that "it is at least arguable" that the fourth factor is applicable only where there exists an absence of mutuality.[1] The supreme court said *Jones v. Corcoran*, 625 S.W.2d 173, 174 (Mo.App.1981), contained dictum that the fourth factor is not limited to a situation of absence of mutuality. The supreme court, in *Hudson*, said, "We need not resolve the point because it seems clear, in the case before us, that all four criteria have been met." This court, for reasons to be stated, finds the presence of all four factors here.

■ Collateral estoppel, if properly invoked, precludes the reexamination of previously litigated issues, whether those issues are of fact or law. *Dickey v. Thirty-Three Venturers*, 550 S.W.2d 926, 930 (Mo. App.1977). Restatement (Second) of Judgments, § 27. The applicability of the doctrine of collateral estoppel is not affected by the legal correctness or incorrectness of the prior adjudication. *Reynolds v. Tinsley*, 612 S.W.2d 828, 830[2] (Mo.App.1981). Even if the prior judgment was erroneous, the issues may not be relitigated. *Northwest Electric Power Coop., Inc. v. American M. Ins. Co.*, 451 S.W.2d 356, 365[13] (Mo.App.1969).

■ With respect to collateral estoppel, or issue preclusion, "[T]he established rule is that the judgment in the prior adjudica-

tion operates only as to the issues, points, or questions actually litigated and determined and not as to matters not litigated in the former action even though such matters might properly have been determined therein." *Am. Polled Hereford v. City of Kansas City*, 626 S.W.2d 237, 241 (Mo. 1982). If the factors justifying the use of collateral estoppel are present, it may be invoked in controversies dealing with apportionment of fault. *Hudson v. Carr*, supra.

Two Missouri cases, *Hudson*, supra, and *Sherwood Estates Homes Association, Inc. v. Schmidt*, 592 S.W.2d 244 (Mo.App. 1979), are of special significance to the resolution of the instant appeal. Usually, when collateral estoppel is invoked, the prior adjudication was a product of a prior action. *Sherwood Estates*, supra, demonstrates that the doctrine may properly come into play, if the other factors are met, on the basis of an adjudication of a portion of one proceeding when that portion has become final prior to the review of other portions of that proceeding.

In *Sherwood Estates*, supra, plaintiff Sherwood brought an injunction action against defendant Schmidt, based on Schmidt's violation of two restrictive covenants pertaining to land owned by Schmidt in a residential addition. The petition was in two counts, Count One alleging a violation of a certain covenant, and Count Two alleging a violation of a different covenant. The trial court found in favor of Sherwood on Count One and Schmidt did not appeal. The trial court, however, found in favor of Schmidt on Count Two and Sherwood appealed with respect to Count Two. On appeal Schmidt, as respondent, attempted to attack Sherwood's right to enforce the covenant on the ground that Sherwood was not the assignee of the developer. That issue had been litigated under Count One.

The court held that the judgment on Count One and the judgment on Count Two were "judgments between the same parties on different causes of action." The judg-

---

1. "Absence of mutuality" exists when the party seeking to invoke collateral estoppel on the basis of a prior adjudication was not himself bound by the prior adjudication.

ment on Count One had attained finality because there was no appeal from it by Schmidt. The issue of Sherwood's status as assignee had been "actually decided and necessarily determined" under Count One. Accordingly, the resolution of that issue was binding upon Schmidt with respect to Count Two and Schmidt, as respondent on Sherwood's appeal on Count Two, could not relitigate that issue.

In *Hudson*, supra, there was a collision between a car driven by Hudson and a car driven by Carr. The owner of the car driven by Hudson sued Carr. Carr brought Hudson into that case as a third party defendant seeking apportionment of fault. On the trial of that property damage case the jury apportioned responsibility, 60 percent against Carr and 40 percent against Hudson. Hudson then brought a separate action against Carr and recovered judgment for $180,000 for personal injuries. The case was tried, as was the case at bar, before January 31, 1984, the effective date of the holding in *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983), where the supreme court abolished the doctrine of contributory negligence and adopted the doctrine of comparative negligence. The court said, at p. 69:

> Here there is the fortuitous circumstance that an issue was drawn in the property damage suit, between this plaintiff and this defendant, in which the jury answered the very question which would have been submitted under *Gustafson*, in determining the proportions in which the fault of the plaintiff and that of the defendant contributed to the collision.

Basing its ruling upon the judgment in the property damage action, and the jury's apportionment of fault therein, the supreme court invoked the doctrine of collateral estoppel. At p. 70 the court said:

> The plaintiff was a party to the prior suit, which resulted in a judgment on the merits. He had every opportunity to demonstrate to the jury that he was free from negligence and that the defendant's negligence was solely responsible for the collision. The jury made a finding deter-

mining relative fault of the parties. It is not significant that the jury was not aware of the effect of its action. It explicitly determined an essential fact issue and there is every reason why its factual determination should control. The nature of collateral estoppel is such that a fact appropriately determined in one lawsuit is given effect in another case involving different issues. Inherent in the doctrine is the assumption that juries do their duty and follow instructions. We believe that, by the application of the doctrine of collateral estoppel in comparative negligence cases, the volume of trial work will be reduced and the manifest benefits of having only one trial of cases involving identical issues will be achieved. The appropriate remedy, then, is to reduce the plaintiff's judgment on the verdict by 40%, resulting in a net judgment of $108,000.

Because most, but not all, of Union Gas's claims of error would be barred by collateral estoppel, it is necessary to determine whether respondents may invoke the doctrine on the basis of the satisfaction, by Union Gas, of the judgment on Claim II. This, in turn, prompts an inquiry into whether the factors enumerated in *Oates v. Safeco Ins. Co. of America*, supra, are present.

█ Union Gas's attempt to avoid collateral estoppel is contained in its reply brief and its suggestions in opposition to respondent's motion to dismiss the appeal. Union Gas admits, at least tacitly, that the satisfied judgment on Claim II fulfills factor (2) of the *Oates* formula, that is that it was a prior adjudication resulting in a judgment on the merits. Union Gas does not claim that the satisfaction was involuntary. Union Gas also admits that factor (3) is satisfied, that is that Union Gas was a party to the prior adjudication. Union Gas claims, however, that factor (1) and factor (4) of the *Oates* formula are lacking.

Union Gas argues that factor (1) is not present because "the issues of liability are not identical." Union Gas argues that the issue (in Claim II) was whether "the car

wash, as master, was contributorily negligent (complete defense) based on any negligence of its employees, including the deceased Roger Killian. On the retrial of the apportionment claim (Claim IV), the issue will be whether or not there is any comparative fault attributable to Roger Killian which will serve as a partial defense. Clearly these issues represent significantly different decisions by the jury and the context and ramifications of the decision are vastly changed."

■ What Union Gas is arguing is that if there is a new trial, the comparative fault doctrine, adopted in *Gustafson v. Benda,* supra, would apply to the new trial but that the doctrine was not available to Union Gas at the time of the original trial. Such an argument assumes, wrongly, that there will be a new trial on Claim IV and on the issue of liability on Claim III. As the opinion in *Gustafson v. Benda* makes clear, the new law it enunciated applies only to cases tried after January 31, 1984. The mere fact that a new trial in this case, if ordered, would take place after that date does not itself entitle Union Gas to a new trial.

To determine whether factor (1), identity of issues, is met, the inquiry is, what issues were decided in the final adjudication of Claim II. It must be remembered that it is of no moment whether those issues were correctly decided. Union Gas's satisfaction of the judgment on Claim II eliminates that question.

With respect to Claim II the jury made the following findings:

1. There was no contributory negligence on the part of "the employees of" Car Wash.

2. Betty Killian was not one of the owners of Car Wash.

3. Union Gas was 100 percent at fault for the explosion.

4. James Wade was zero percent at fault for the explosion.

At no time during the trial or on this appeal did Union Gas claim that there was any negligence on the part of the owners of Car Wash except for their vicarious responsibility, as masters, for the negligence of the employees of Car Wash. The only employees singled out by Union Gas's brief for being negligent were employees Peck and Brown. Union Gas's brief does not point to negligence on the part of Roger Killian individually.

Union Gas saw fit to submit the issue of contributory negligence, with respect to Claim II, on the basis of the negligence of "the employees." It might be argued, although Union Gas does not do so, that such an instruction required proof of negligence of more than one employee and that the jury could properly reject the contributory negligence defense even if it found that *one* employee was in fact negligent. It was, however, a group submission and a group exoneration. Having so framed the issue, Union Gas is in no position to complain about the framing.

In fine, all issues with respect to contributory negligence on the part of Car Wash or any of its employees, including Roger Killian, were laid to rest by the adjudication of Claim II. If there had been any contributory negligence with respect to Claim II, that claim would have been defeated. The satisfaction of Claim II is an adjudication that there was no such contributory negligence. Thus there was no negligence on the part of Car Wash or its employees which would serve as a basis for Claim IV.

With regard to Claim III, Union Gas submitted, as an affirmative defense, the contributory negligence of "the employees of" Car Wash. That defense was eliminated by the adjudication on Claim II. Neither in the trial court nor in this court was there any claim that Betty Killian, as one of the two parents bringing Claim III, was individually negligent. Union Gas attempted, unsuccessfully, to prove she was an owner of Car Wash so as to impute the negligence of the employees of Car Wash to her. However, by reason of the adjudication of Claim II, Betty Killian was not an owner of Car Wash. Thus there was no

negligence on her part, individually or vicariously.

Accordingly, so far as Claim III is concerned, it is immaterial whether or not there was any negligence, individually or vicariously, on the part of Robert Killian. This is so because where both parents sue for the wrongful death of a child, the contributory negligence of only one of them, in the absence of a showing of joint enterprise or agency between the parents, is no defense. *Reynolds v. Thompson,* 215 S.W.2d 452, 454 (Mo.1948); *Dooley v. Dooley,* 290 S.W.2d 856, 858 (Mo.App.1956). That principle no doubt prompted the unsuccessful attempt of Union Gas to show that Betty Killian was an owner of Car Wash.

If, as this court later finds, the fourth factor of the *Oates* formula is present and the doctrine of collateral estoppel applies to the benefit of respondents, the claims of error sought to be raised by Union Gas meet the following fates:

1. Claim: The verdict-directing instruction of the parents submitting Claim III was erroneous in failing to mention the contributory negligence of "the employees of" Car Wash. Answer: There was no such contributory negligence so the error, if any, was immaterial.

2. Claim: The verdict-directing instruction on Claim III contained certain submissions of negligence which were not supported by the evidence, which were incomplete statements of negligent acts and which were improperly intermingled. Answer: Union Gas was negligent and that negligence was the sole cause (100 percent) of the explosion. The manner in which the jury arrived at that finding on Claim III is immaterial.

3. Claim: Union Gas, by reason of various errors, was denied a fair trial on Claim IV and thereby deprived of the right to apportion some degree of fault to Car Wash. Answer: There was no negligence on the part of the employees of Car Wash,

Car Wash was zero percent at fault, and there was no basis for apportionment.

4. Claim: Union Gas, by reason of various errors, was denied a fair trial on Claims V, VI, and VII, all against James Wade, and thereby deprived of the right to apportion some degree of fault to James Wade. Answer: Wade was zero percent at fault and there was no basis for apportionment.

The fourth factor of the *Oates* formula is whether Union Gas had a full and fair opportunity to litigate the issues in the prior suit.

In *Bi-State Dev. Agency v. Whelan Sec.,* 679 S.W.2d 332, 336[6] (Mo.App.1984), the court listed certain sub-factors which should be considered in determining whether or not the fourth factor is present. Those sub-factors are:

1. Whether the person against whom estoppel is asserted had a strong incentive to litigate the first action;

2. Whether the second forum may afford the party against whom estoppel is asserted procedural opportunities not available in the first action;

3. Whether the prior judgment, upon which estoppel is based, may be inconsistent with one or more prior judgments; and

4. Whether the forum in the first action may have been substantially inconvenient to the party against whom estoppel is asserted.

Union Gas had a strong incentive to litigate, and did litigate, Claim II. The trial of Claim II, which was tried simultaneously with the other six claims, began on August 8, 1983, and ended on August 25, with weekend recesses. The seven-volume transcript of the trial exceeds 2,600 pages. Many witnesses, lay and expert, were called and were extensively examined by all counsel, including that of Union Gas.[2]

Claim I and Claim II were major claims and Union Gas actively defended against them. Claim III was not in the case until Union Gas brought Betty Killian into it as

---

2. Present counsel for Union Gas did not repre-  sent it at the trial.

a third party defendant. In so doing, Union Gas placed Betty Killian and her husband in the procedural position of being forced to file Claim III as a compulsory counterclaim. *Jones v. Corcoran*, 625 S.W.2d 173, 175 (Mo.App.1981). Rule 55.-32(a), V.A.M.R. It was not necessary for Union Gas to file Claims V, VI, and VII against Wade because an attempt to obtain apportionment of fault with respect to Wade could have been the subject of a separate and independent action. *Safeway Stores, Inc. v. City of Raytown*, 633 S.W.2d 727, 731 (Mo. banc 1982). The same is true of Claim IV. The argument of Union Gas that the highly emotional aspect of Claim III deprived it of a fair trial on the other six claims is destroyed by the fact that it was Union Gas itself which caused Claim III to be litigated in this action.

Union Gas had strong incentive to litigate Claim II, and sub-factor 1 is present. Claim II was litigated in the same forum, indeed at the same time, as the other claims, and thus Union Gas was afforded the same procedural opportunities, no more and no less, with regard to Claim II as it was with respect to the other six claims. Sub-factor 2 is present. The satisfied judgment on Claim II was the first judgment and there were no "prior judgments," that is, no judgments prior to Claim II. Sub-factor 3 is met. The forum for Claim II was the same forum as that for the other six claims and there was no showing of "inconvenience." Sub-factor 4 is met.

Union Gas had a fair and full opportunity to litigate the comparative fault issue affecting Car Wash, James Wade and itself. Union Gas had a fair and full opportunity to litigate all of the other issues found by the jury with respect to Claim II as previously enumerated. The fourth factor in *Oates* is present, respondents are entitled to the benefit of collateral estoppel, and most of Union Gas's points on appeal meet the respective fates previously described.

■ Respondents Killian filed a motion seeking to dismiss the entire appeal of Union Gas on the ground of collateral estoppel. There is one issue, however, raised by Union Gas, which is not eliminated by collateral estoppel. That issue pertains to the size of the award on Claim III and the propriety of the instructions submitted in conjunction with Claim III with respect to the damage aspect of that claim. The liability issue has been determined in favor of the parents and that determination has become final by reason of collateral estoppel. The satisfaction by Union Gas of the judgment on Claim II did not, however, constitute a recognition of the validity of the *amount* of the award on Claim III.

The general rule is that the right of appeal is favored by the law, and it will not be held to have been waived except on clear and decisive grounds. Where a judgment involves distinct and severable matters, a waiver or estoppel as to only one or a part thereof will not prevent an appeal as to the residue. 4 C.J.S.App. and Err., § 211, pp. 616–617. See *City of St. Louis v. Nelson*, 108 Mo.App. 210, 83 S.W. 271, 274 (Mo. App.1904). Respondents' motion to dismiss the entire appeal is denied.

Union Gas asserts that the verdict of $750,000 on Claim III was excessive. In conjunction with that argument, although presented in a separate point, Union Gas argues that the trial court erred in submitting, at the request of the parents and in connection with Claim III, Instructions No. 24 and 25 which read:

### INSTRUCTION NO. 24

If you find in favor of Betty and Robert Killian under Instruction Number 20,[3] and if you believe the conduct of Union L.P. Gas Systems, Inc., as submitted in Instruction Number 20 showed complete indifference to or reckless disregard for the safety and rights of others, then in addition to any damages to which you may find Betty and Robert Killian entitled under Instruction Number 23 you may take into consideration the aggravating circumstances, if any, attendant upon the fatal injuring of Roger Killian

---

**3.** Instruction No. 20 was the parents' verdict director of Claim III.

and your verdict if for Betty and Robert Killian will be in such sum as a whole stated in one lump sum as you believe from the evidence will represent fair and reasonable compensation for losses so sustained.

### INSTRUCTION NO. 25

The phrase "aggravating circumstances," as used in these instructions, means willful misconduct, recklessness, a want of care indicative of indifference to consequences, or a reckless disregard of the safety and rights of others.

Also at the request of the parents the court gave Instruction No. 23 which reads:

### INSTRUCTION NO. 23

If you find in favor of Betty and Robert Killian, then you must award them such sum as you believe will fairly and justly compensate them for any damages you believe they and decedent sustained and Betty and Robert Killian are reasonably certain to sustain in the future as a direct result of the fatal injury to Roger Killian.

In assessing damages you may take into consideration any aggravating circumstances attendant upon the fatal injury.

Instruction No. 23 is MAI 5.01 (1981 Revision). It should be noted that Instruction No. 24 told the jury to award damages in addition to those authorized under Instruction No. 23 if the jury made the findings required by Instruction No. 24. Instruction No. 25 purported to define "aggravating circumstances." That phrase, although used in MAI 5.01, is not defined therein. Neither Instruction No. 24 nor Instruction No. 25 is in nor expressly authorized by MAI.

In *Glick v. Ballentine Produce Incorporated*, 396 S.W.2d 609, 616–617 (Mo. 1965), our supreme court said:

There is no recovery in a death case for punitive damages, as such. Such a petition may plead, and appropriate instructions may submit, the question of "mitigating or aggravating circumstances," if the evidence justifies it.... *While added damages because of "aggravating circumstances" may, in a sense, be considered as punitive in nature, they are not to be submitted as such nor are they to be submitted separately,* nor is any total verdict and judgment to exceed the statutory limit. Within that total limit the jury may exercise a broad discretion. (Citing authorities.) (Emphasis added.)

The giving of Instruction Nos. 24 and 25 was an improper submission, separately, of punitive damages in violation of the principle stated in *Glick* and was reversible error.

All portions of the judgment with respect to Claims I, II, IV, V, VI, and VII are affirmed. That portion of the judgment on Claim III which awards Robert Killian and Betty Killian the sum of $750,000 is set aside and the cause is remanded with directions to the trial court to order a new trial on Claim III with respect to the issue of damages only. That portion of the judgment on Count III which finds the issue of liability against Union Gas and in favor of Robert Killian and Betty Killian is affirmed. The retrial of the issue of damages on Claim III may include a showing with respect to the nature of the conduct of Union Gas and the circumstances insofar as they affect the issue of damages. Respondents' motion to dismiss the appeal is denied.

It is so ordered.

TITUS, P.J., and GREENE, J., concur.